## A93A1102. GIVENS v. THE STATE.
## A93A1186. BARFIELD v. THE STATE.
### (439 SE2d 22)

BLACKBURN, Judge.

The defendants, Carroll Givens and Arthur Barfield, were con-
victed of criminal attempt to possess cocaine, stemming from a re-
verse sting operation conducted by the Albany-Dougherty Drug Unit
on May 9, 1992. These appeals followed.

The State's evidence at trial showed that on the night in ques-
tion, a truck approached one of the undercover police officers who was
posing as a drug dealer on the street. Barfield drove the truck, and
Givens was a passenger. The officer asked the defendants what they
wanted, and Givens replied that he needed a "twenty." The defend-
ants were then told to back up to a point where another officer was
standing. Barfield had money in his hand and told the second officer
that he wanted a "twenty," and the officer handed him a bag contain-
ing crack cocaine. Givens then remarked, "you get one then I'll get
one," or words to that effect. Barfield looked at the contents of the
bag and handed it back to the officer. Next, without any explanation,
the defendants attempted to drive off, and they were immediately ar-
rested.

1. On appeal, Barfield and Givens contend that their convictions
must be reversed due to the State's failure to disprove their affirma-
tive defense of abandonment beyond a reasonable doubt. We disa-
gree.

Although a defendant in a criminal case has no burden of persua-
sion with regard to an affirmative defense asserted, there must be
some evidence presented by either the defendant or the State that
raises the defense. "The responsibility of producing evidence of an
affirmative defense and the burden of persuasion by proof beyond a
reasonable doubt are two distinct and separate concepts. The first is
placed squarely on the defendant unless the state's evidence raised
the issue." *Moore v. State,* 137 Ga. App. 735, 736 (224 SE2d 856),

overruled on other grounds *State v. Moore*, 237 Ga. 269 (227 SE2d 241) (1976). See also *May v. State*, 179 Ga. App. 736 (2) (348 SE2d 61) (1986).

Where a defendant testifies and raises an affirmative defense by that testimony, the State then has the burden of disproving that defense beyond a reasonable doubt. *Bentley v. State*, 261 Ga. 229 (404 SE2d 101) (1991); *Coleman v. State*, 141 Ga. App. 193 (2) (233 SE2d 42) (1977). However, in the instant cases, the defendants did not testify or present any other evidence to support a defense of abandonment. Further, the State's evidence did not raise an affirmative defense of abandonment, or establish such an abandonment as fact.

The defendants were charged with and convicted of criminal attempt to possess cocaine. "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. The State's evidence established that the defendants drove up to an undercover officer posing as a drug dealer, placed an order for a specific quantity of cocaine, backed up their vehicle with money in hand to another undercover officer to pick up their order, and actually took possession of the cocaine. In the end, they handed the cocaine back to the undercover officer and attempted to drive away, but by that point in time they had already taken a "substantial step" toward committing the crime of possession of cocaine. If the defendants had a change of heart, it was after the criminal attempt was completed, and thus too late.

Under these circumstances, the trial court properly denied the defendants' motions for directed verdict of acquittal based on the defense of renunciation, and properly refused to instruct the jury that the State had the burden of disproving that defense beyond a reasonable doubt. The trial court's general jury charge on abandonment was not required by the evidence.

Even if the State's evidence had raised the affirmative defense of abandonment, "[t]he determination of whether the State has met its burden to disprove the affirmative defense is for the jury." *Bentley v. State*, supra at 230. Inasmuch as the defendants have not even suggested an explanation for their conduct other than the jury's conclusion that there was no abandonment, we should not disturb the jury's finding. Cf. *Rash v. State*, 207 Ga. App. 585, 587 (5) (428 SE2d 799) (1993).

2. In reverse sting operations, undercover police officers pose as drug dealers in an area known for drug activity and sell cocaine to purchasers. Following the purchase or attempted purchase, the buyer is arrested for possession of cocaine. The law enforcement officers use this operation as a means of attempting to prevent street level drug activities.

The trial court properly disallowed defense counsel's attempt during the trial to develop an argument that reverse sting operations conducted by the police are illegal and so outrageous as to constitute a violation of due process. There was no criminal intent or act on the part of the undercover officers, and it is the targeted illicit trade of drugs that properly may be described as outrageous, rather than the reverse sting operations designed and conducted to combat that trade. As noted by the United States Supreme Court in the context of discussing the defense of entrapment, "an agent deployed to stop the traffic in illegal drugs may offer the opportunity to buy or sell drugs, and, if the offer is accepted, make an arrest on the spot or later." *Jacobson v. United States*, 503 U. S. ___ (112 SC 1535, 118 LE2d 174, 185) (1992).

3. A videotape of the attempted purchase was played for the jury after the police officer who taped the incident testified and laid the proper foundation for its admission. During cross-examination of the officer, defense counsel initially asked that the tape be played again to assist with that cross-examination. The trial court denied the request, noting that the jury would recall what the tape depicted, but did not otherwise limit the cross-examination of the officer regarding the matter. On appeal, however, the defendants contend that the trial court's refusal to allow the replay of the tape constituted a harmful restriction of their cross-examination of this witness.

The scope of cross-examination is not unlimited and lies within the sound discretion of the trial court. *Hayes v. State*, 193 Ga. App. 33 (2) (387 SE2d 139) (1989). In the instant cases, the defendants have not shown how the restriction adversely affected their ability to develop their defense of abandonment. The videotaped transaction was brief and did not involve a great deal of action to recall, and defense counsel was afforded a thorough cross-examination of the police officer regarding the contents of the tape. Under these circumstances, the trial court did not abuse its discretion.

4. The defendants were represented by separate counsel. At trial, neither defendant presented any evidence, and under OCGA § 17-8-71, each defense counsel had the right to open and conclude the closing argument. *McDuffie v. Jones*, 248 Ga. 544 (2) (283 SE2d 601) (1981). In the instant cases, the trial court thus erred in only allowing one defense counsel to open and the other defense counsel to conclude the closing argument.

"The question remains, however, whether the error was harmless. The right to make the final argument to the jury is an important right and harm to the defendant is presumed on appeal when the right is erroneously denied. *Seyden v. State*, 78 Ga. 105 (4) (1886). However, the presumption is not absolute and the error may be shown to be harmless." *McDuffie v. Jones*, supra at 547.

One defendant was improperly prohibited from arguing before the State and the other defendant was improperly prohibited from arguing after the State. The evidence was the same against both defendants, and the jury found each defendant guilty. In view of that evidence, including the videotape and the testimony of the police officers who conducted the reverse sting operation, we find it highly probable that the error did not contribute to the defendants' convictions and the trial court's failure to properly allow argument, while error, is not reversible error under the facts of this case. Id. at 548.

5. Viewed in the light most favorable to support the verdict, the evidence was sufficient to authorize a rational trier of fact to find the defendants guilty of criminal attempt to possess cocaine beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments affirmed. Pope, C. J., Birdsong, P. J., Beasley, P. J., Cooper, Andrews, Johnson and Smith, JJ., concur. McMurray, P. J., dissents.*

McMurray, Presiding Judge, dissenting.

Under Georgia law, "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. To reward those who have a change of heart and voluntarily abandon their criminal purpose, our law also provides: "(a) When a person's conduct would otherwise constitute an attempt to commit a crime under Code Section 16-4-1, it is an affirmative defense that he abandoned his effort to commit the crime or in any other manner prevented its commission under circumstances manifesting a voluntary and complete renunciation of his criminal purpose. (b) A renunciation of criminal purpose is not voluntary and complete if it results from: (1) A belief that circumstances exist which increase the probability of detection or apprehension of the person or which render more difficult the accomplishment of the criminal purpose; or (2) A decision to postpone the criminal conduct until another time." OCGA § 16-4-5.

The remedial purpose behind OCGA § 16-4-5 (formerly OCGA § 26-1003) is explained in the Committee Notes to the 1968 Criminal Code as follows: "This section is a new provision that specifically allows a person to withdraw without criminal liability if he has a change of mind and heart and voluntarily desists from the criminal attempt before the ultimate crime is perpetrated. Theoretically, though detection might be rare and proof might be difficult, a person who, with the requisite criminal intent had gone far enough toward the commission of a crime for his act to constitute an attempt, would be guilty of a criminal attempt at that point, and without this [section], he would

be subject to severe punishment. The philosophy of [this section] is that the person who really repents at that point and abandons the enterprise should not be punished. It should be emphasized that this defense is not available to one whose criminal activity ceases only because of difficulty, or a decision to wait for a later or safer opportunity."

The majority takes the position that the evidence did not raise the defense of abandonment. In this regard, the majority opines: "If the defendants had a change of heart, it was after the criminal attempt was completed, and thus too late." In my view, this approach misses the point of the abandonment defense. As the Committee Notes point out, the abandonment defense was enacted to enable a person who would *otherwise be guilty of a criminal attempt* to repent and abandon the criminal enterprise. That is exactly what happened in this case. The mere fact that defendants may have committed a criminal attempt before they had a change of heart is of no consequence.

In my view, the evidence presented by the State demonstrated that defendants abandoned their criminal scheme. Accordingly, I am of the view that the affirmative defense of abandonment was raised below. See generally *Noles v. State*, 164 Ga. App. 191, 192 (296 SE2d 768). (Indeed, the trial court must have agreed because it charged the jury on the law of abandonment.)

To overcome defendants' affirmative abandonment defense, the State needed to introduce evidence disproving abandonment beyond a reasonable doubt. See *Coleman v. State*, 141 Ga. App. 193, 194 (2) (233 SE2d 42). I feel the State failed in that endeavor. The officers testified that they did not announce they were police officers until defendants started to leave the scene. They also testified that they did not know why defendants aborted their criminal enterprise.

Based on the evidence adduced below, we can only speculate as to why defendants decided they did not want to purchase the cocaine that the police were selling. Did they somehow suspect that they were being set up? Did they decide that the cocaine was overpriced? Or, did they have a real change of heart? The evidence adduced below does not answer these questions.

The State was unable to demonstrate beyond a reasonable doubt that defendants abandoned their criminal purpose because they believed they were about to be apprehended and decided to wait for a safer opportunity. Compare *Padgett v. State*, 170 Ga. App. 98, 100 (316 SE2d 523), in which victim's obstructive conduct caused defendant to abandon his scheme. Accordingly, it is my view that the State failed to present evidence enabling a rational trier of fact to find beyond a reasonable doubt that defendants made a criminal attempt to possess cocaine.

I respectfully dissent.

Decided November 15, 1993 —
Reconsideration denied December 7, 1993 — 

*Dorough & Sizemore, Kermit S. Dorough, Jr.,* for Givens.
*T. Lee Bishop, Jr.,* for Barfield.
*Britt R. Priddy, District Attorney, Johnnie M. Graham, Assistant District Attorney,* for appellee.