## A00A2482. GOBER v. THE STATE.
(547 SE2d 656)

MILLER, Judge.

Jerry Thomas Gober appeals following his conviction on one count of unlawful possession of methamphetamine. We affirm.

An undercover Gwinnett County police detective arranged, through a confidential informant, to meet with Gober on the evening of August 30, 1999. The pair met in a shopping center parking lot in Buford where, as prearranged, Gober purchased one ounce of methamphetamine from the officer for $1,000. After paying the officer and taking possession of the drugs, Gober was arrested. The entire

---

[16] See *Franchell*, 241 Ga. App. at 131 (3).

reverse sting operation was videotaped, and the tape was shown to the jury.

At trial, Gober admitted that he was a methamphetamine addict, which had contributed to his 1995 divorce. But he said that he had to take random drug tests in order to be able to see his children and that he had not missed a visit. Gober raised an entrapment defense, testifying that he had purchased the methamphetamine only at the prodding of his girlfriend, who was also the State's confidential informant.

Following his conviction, Gober was given a six-year sentence, with thirty days to serve in prison, followed by twenty-three months of house arrest and the remainder on probation.

In several related enumerations of error, Gober contends that the court erred in allowing the jury to convict him based on his purchase of methamphetamine that the Gwinnett County police had obtained from their evidence safe. He argues that under OCGA § 16-13-49 (u) (1) the police should have destroyed this methamphetamine and should not be allowed to use it in reverse sting operations. His argument is based on the evidence being summarily forfeited to the State under OCGA § 16-13-49 (y) inasmuch as the owners of the methamphetamine are unknown. He made this same argument in a writ of mandamus action in *Dean v. Gober*,[1] in which the Supreme Court agreed that the Gwinnett County police should have destroyed its methamphetamine but that it would not require the police to destroy the particular methamphetamine used regarding Gober. The Court reasoned that it was now evidence in a case and thus exempt from destruction under the language of OCGA § 16-13-49 (u) (1).[2]

The question before us is whether we should reverse Gober's conviction based on the police using a drug in a reverse sting operation that the police should have earlier destroyed. We hold that the police conduct was not so outrageous as to constitute a violation of Gober's due process rights.

*Dean v. Gober*[3] makes it clear that the only "misconduct" of the Gwinnett police here was the failure to maintain accurate records. Such "misconduct" does not rise to the level of outrageousness such that a reversal of the conviction is required. In this regard, over the years similar reverse sting operations using drugs held by the police from previous criminal investigations have resulted in hundreds if not thousands of convictions, many of which would become challengeable if proper records cannot be found. This result is neither necessary nor appropriate.

---

[1] 272 Ga. 20 (524 SE2d 722) (2000).
[2] Id. at 23 (3).
[3] Id. at 23-24 (4).

1. *Dean v. Gober*[4] is controlling. The Supreme Court concludes its opinion by stating that reverse sting operations using illegal drugs are authorized under Georgia law:

> Since law enforcement officers are authorized by OCGA § 16-13-35 (c) (4) to possess controlled substances while acting in the course of their official duties, there is no prohibition in the Controlled Substances Act against the retention and legal use of seized controlled substances not listed in Schedule I so long as the owner of the drug is known and forfeiture proceedings have not been commenced. [Under the language of OCGA § 16-13-49 (y), they are therefore not summarily forfeited and subject to mandatory destruction under OCGA § 16-13-49 (u) (1).] *Thus, Gober's attempt to procure a ruling that reverse stings cannot be used because the drugs used in those operations cannot legally be maintained by law enforcement officers must fail.*[5]

Thus, there is nothing wrong with police, who have possession of illegal drugs from prior investigations, using those drugs in reverse sting operations, so long as the owner of the drug is known and forfeiture proceedings have not been commenced. Here no forfeiture proceedings have been commenced. Rather, because of poor record-keeping, the Gwinnett County Police Department could not identify the owner of the methamphetamine used here in this reverse sting operation involving Gober. The moral of the story is that police departments in possession of illegal drugs from prior investigations must maintain careful records as to the owners (i.e., the origin and custody) of those drugs; otherwise, they are summarily forfeited and must be destroyed. If proper procedure is followed in record-keeping (which implies proper controls), then the police are free to use those drugs in law enforcement efforts.

The special concurrence would reach a contrary result. The special concurrence concludes that the State may never use drugs from a previous investigation to conduct a reverse sting operation. Apparently, the State would be required to expend taxpayer money to purchase the drugs from a legally registered manufacturer, if there is such. It is absurd to require the State to destroy confiscated drugs, legally held by police, and then simultaneously to spend taxpayer money to buy the same drugs they just destroyed for use in a valid law enforcement technique. We do not believe such is required, and

---

[4] Id.
[5] (Emphasis supplied.) Id. at 24-25 (4).

the history of Georgia law enforcement does not support such a conclusion.

2. This brings us to the overriding question — whether the police's use of the methamphetamine here in a commonly conducted reverse sting operation constitutes police misconduct so outrageous that due process was violated requiring this conviction (and countless others) to be reversed. We hold it does not.

To violate due process, the State's misconduct must be so extreme that it caused demonstrable prejudice to the defendant's recognized constitutional or statutory rights or was so outrageous that it was fundamentally unfair and shocking to the universal sense of justice mandated by constitution or statute so as to deprive the defendant of a fair trial as a matter of law.[6] "Absent demonstrable prejudice, a finding that such misconduct was so outrageous as to demand dismissal of the indictment[ ] would occur only in the *rarest of cases*."[7]

One such example of misconduct would be forcing the defendant at gunpoint to set up and operate an illegal drug lab, which obviously would prejudice the defendant.[8] An example of what does *not* constitute outrageous conduct is trespassing on defendant's land that is posted "No Trespassing" and finding illegal drugs in an open field, which drugs are used in convicting the defendant.[9] A second example is repeated efforts by an informant, acting at the behest of investigating officers, to encourage a corrupt officer to arrest a drug dealer so that the corrupt officer would illegally compensate the informant with confiscated funds.[10] A third example is a reverse sting operation involving the sale of illegal drugs by police officers.[11] Such do not constitute a violation of due process.

The police's failure to maintain careful records of the ownership of the methamphetamine here did not unfairly prejudice Gober. The source of the methamphetamine played no role in the conviction; it was Gober's unauthorized purchase of that controlled substance that convicted him. The State's failure to maintain accurate records as to the origin of the controlled substance certainly did not affect whether Gober knowingly purchased contraband which he was neither licensed nor authorized to possess. Even though the police were obligated to destroy the drug as a result of their poor record-keeping, their failure to do so is not, in our view, so outrageous as to violate

---

[6] *McGarvey v. State*, 186 Ga. App. 562, 564 (2) (368 SE2d 127) (1988).

[7] (Emphasis supplied.) Id.

[8] See *Strobhert v. State*, 184 Ga. App. 615, 617 (1) (362 SE2d 99) (1987).

[9] *LoGiudice v. State*, 251 Ga. 711, 721 (309 SE2d 355) (1983) (Smith, J., dissenting).

[10] *City of Atlanta Govt. v. Smith*, 228 Ga. App. 864, 867 (3) (493 SE2d 51) (1997) (whole court).

[11] *Givens v. State*, 211 Ga. App. 290, 291-292 (2) (439 SE2d 22) (1993), rev'd on other grounds, 264 Ga. 522 (448 SE2d 687) (1994).

fundamental fairness or to shock the universal sense of justice.[12]

Recall that *Rochin v. California*[13] was cited by the *United States v. Russell*[14] court as authority for the proposition that the conduct of law enforcement agents can be so outrageous that due process would absolutely bar a prosecution. In *Rochin*, police made a warrantless entry into a home and forced their way into Rochin's bedroom. Rochin immediately swallowed two capsules from a nightstand, whereupon he was handcuffed, taken to a hospital, force-fed an emetic, and intubated to have his stomach pumped. The two morphine tablets he vomited formed the basis of his conviction for possession of narcotics.

Here, the police's conduct in failing to maintain records does not even come close to this set of facts. It certainly did not violate Gober's fundamental due process rights, whether asserted under the Georgia or federal constitution.[15]

Nevertheless, we do not wish to promote law enforcement's collection and storage of excessive amounts of illegal drugs. The better practice would be to create a strict procedure governing the retention of illegal drugs from prior investigations, which procedure would set forth the amount of drugs that may be retained and the length of time they may be retained. Also, there should be strict controls on the use of these drugs in law enforcement operations such as the reverse sting operation here. For this reason, we invite and encourage the legislature to develop such guidelines.

3. Gober also contends that the trial court improperly abridged his right to cross-examine Georgia Bureau of Investigation crime lab expert Terry Mills. When Gober's attorney asked Mills if he was familiar with the requirements of Georgia law regarding the destruction of contraband, the State objected on the ground of relevance, and the trial court sustained the objection. Gober's counsel made no exception to this ruling, but merely responded, "Okay."

The admission or exclusion of evidence that is objected to on the ground of relevance rests in the sound discretion of the trial court whose decisions will not ordinarily be disturbed on appeal absent an abuse of that discretion.[16] And to preserve the right to complain about a ruling limiting cross-examination, a party "must either ask the questions he desires to ask or state to the court what questions he desires to ask and then interpose timely objection to the ruling of the court denying [him] the right to propound the questions."[17]

---

[12] See *United States v. Russell*, 411 U. S. 423, 432 (93 SC 1637, 36 LE2d 366) (1973).

[13] 342 U. S. 165 (72 SC 205, 96 LE 183) (1952).

[14] 411 U. S. 431-432.

[15] See Ga. Const. of 1983, Art. I, Sec. I, Par. I.

[16] *Harden v. State*, 239 Ga. App. 700, 702 (4) (521 SE2d 829) (1999).

[17] (Citations and punctuation omitted.) *Daniels v. State*, 235 Ga. App. 296, 297 (1) (509 SE2d 368) (1998). See also *Morris v. State*, 239 Ga. App. 100, 103 (4) (520 SE2d 485) (1999).

Because Gober failed to follow this procedure, he has waived his right to object to the ruling on appeal.

4. In addition, Gober argues that it was error for the trial court to refuse to allow him to argue to the jury that the Gwinnett County Police Department's methods and procedures were unlawful as it relates to the issue of entrapment.

We note initially that Gober has failed to identify any particular ruling of the trial court that he claims prevented him from fully presenting his entrapment defense. Nevertheless, as we held in Division 1, it was not illegal for the police to conduct the reverse sting in this case and thus it would not be error for the trial court to disallow any such argument.[18] Moreover, we note Gober presented both evidence and argument in support of his entrapment defense. And the trial court charged the jury on the issue. Therefore, we are unable to identify any error by the trial court on this ground.

5. Gober further contends that the trial court erred when it failed to allow jury charges on the illegality of the police conduct. This argument appears to relate to 20 of Gober's requests to charge, but he fails to provide any specific argument as to why any of these charges should have been given. Instead, he argues generally that it is error for a trial court to fail to charge the jury on applicable principles of law.[19]

"It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error."[20] Based upon our review of the charge as a whole and the requests to charge, we find that the trial court adequately instructed the jury on the law applicable to the issues in the case.

6. Gober also asserts that the trial court erred in admitting videotapes showing his arrest and his statement to police because the tapes contained extraneous matter, gaps, and conversation by individuals who cannot be seen on the tape. In particular, Gober argues that undue prejudice resulted from the admission of evidence showing that he was in lawful possession of a gun at the time of his arrest.

Generally, all the circumstances connected with a defendant's arrest are admissible as part of the res gestae.[21] And relevant evidence will not be excluded merely because it incidentally shows the

---

[18] See *Givens*, 211 Ga. App. at 292 (2).

[19] Although Gober also attempts to tie this general argument to an enumeration asserting that the trial court erred in failing to consistently charge the jury that entrapment can occur "by the conduct of a government officer, employee or *agent*," he fails to provide any argument to support this enumeration, and it is therefore deemed abandoned. Court of Appeals Rule 27 (c) (2).

[20] (Punctuation omitted.) *Roker v. State*, 262 Ga. 220, 222 (4) (416 SE2d 281) (1992).

[21] *Anderson v. State*, 236 Ga. App. 679, 682 (4) (513 SE2d 235) (1999).

commission of another crime, puts the defendant's character at issue, or is prejudicial, where that evidence is admitted for the purpose of showing the circumstances of the arrest.[22] Here, the evidence showed that Gober was in lawful possession of a gun at the time of his arrest. Even assuming this evidence incidentally placed Gober's character at issue, it was admissible as part of the res gestae, and no harmful error occurred.

Moreover, Gober has failed to identify any other specific evidence from the tapes that he contends was irrelevant and has failed to show how any such evidence was prejudicial to him. Accordingly, we find no error by the trial court in admitting the tapes.[23]

7. Gober further enumerates as error the denial of his motion for mistrial following the arresting officer's statement that most people who purchase an ounce of methamphetamine generally break it up and use it for trafficking.

Gober failed to preserve this issue for appeal when he failed to renew his motion for mistrial after the trial court denied the motion but gave curative instructions to disregard this testimony. "It is a longstanding rule in Georgia that in order to preserve the issue for appellate review after curative instructions are given the motion for mistrial must be renewed."[24]

8. Gober next argues that the State's expert's identification of the methamphetamine on redirect was inadmissible because it was beyond the scope of the direct examination.

On direct, Mills from the GBI crime lab was qualified as "an expert in drug analysis and particularly narcotics and methamphetamine." In response to the prosecutor's questioning, Mills described the tests he had run on the drugs at issue and stated his conclusion that the material was methamphetamine.

On redirect, the prosecutor sought permission to ask a question she had omitted on direct. She had failed to ask Mills's *expert* opinion as to the identity of the drugs. The trial court allowed the question over Gober's objection.

We find no error as the trial court did not grossly abuse its discretion in allowing the State to ask such a relevant and inadvertently omitted question on redirect.[25]

9. Gober enumerates the admission of his prior conviction for possession of marijuana. After Gober testified he had not done any

---

[22] Id.; *Hutson v. State*, 216 Ga. App. 100, 101-102 (5) (453 SE2d 130) (1995).

[23] *Williams v. State*, 202 Ga. App. 485, 486 (2) (414 SE2d 712) (1992).

[24] (Punctuation omitted.) *Wells v. State*, 243 Ga. App. 629, 631 (3) (534 SE2d 106) (2000).

[25] See *Mincey v. State*, 251 Ga. 255, 267-268 (15) (304 SE2d 882) (1983); *Owens v. State*, 205 Ga. App. 824, 825 (2) (423 SE2d 731) (1992).

drugs or smoked any marijuana since 1995, the State was permitted to introduce his subsequent guilty plea under the First Offender Act. In May 1997, Gober was stopped by Gwinnett County police at a roadblock. The officer who stopped Gober testified that as he motioned for Gober to stop, he noticed Gober reaching down between the seats of the car. When Gober rolled down his window, the officer smelled an odor of burnt marijuana, "as if he had just used it or had been in his vehicle or left a location where it had been used." Gober denied smoking any marijuana. The officer subsequently found a bag of marijuana in the place Gober had been reaching. Gober was charged with driving with an expired license and possession of less than an ounce of marijuana. He later pled guilty under the First Offender Act.

Where, as here, a defendant testifies he has committed a crime and states that this is his only criminal record, his testimony is subject to rebuttal by proof of other crimes he has committed.[26]

Moreover, similar transaction evidence may be admitted to rebut the defense of entrapment, insofar as the evidence proves the falsity of *specific testimony* of the defendant regarding his lack of predisposition to commit the crime.[27] In *Beauchene v. State*, this Court found no error in the introduction of a prior conversation with defendant about the sale of cocaine where defendant testified he had never sold drugs except when entrapped by authorities.[28] Similarly, under the circumstances of this case, it was not error for the trial court to admit evidence of Gober's prior guilty plea to possession of marijuana in 1997, as this proves the falsity of his specific testimony that he had not used drugs since 1995.

*Judgment affirmed. Blackburn, C. J., Andrews, P. J., Ruffin, Ellington and Mikell, JJ., concur. Pope, P. J., concurs specially.*

POPE, Presiding Judge, concurring specially.

I fully concur with Divisions 3 through 9 of the majority opinion.

With regard to Divisions 1 and 2, I agree with the majority's conclusion that the police conduct in this case was not so outrageous as to constitute a due process violation. I write separately, however, to express my concern over the use by police of illegally held drugs in reverse sting operations.

As an initial matter, I do not believe that the Supreme Court of Georgia's decision in the related matter of *Dean v. Gober*, 272 Ga. 20 (524 SE2d 722) (2000), approved the Gwinnett County Police Depart-

---

[26] *Jones v. State*, 257 Ga. 757, 759 (1) (b) (363 SE2d 529) (1988).

[27] *Beauchene v. State*, 194 Ga. App. 222, 223 (2) (a) (390 SE2d 116) (1990).

[28] Id. See also *Haralson v. State*, 223 Ga. App. 787, 793 (7) (479 SE2d 115) (1996) (whole court) (evidence of defendant's prior drug use admitted to rebut entrapment defense).

ment's use of the methamphetamine in this case. Gober asserted essentially the same argument in his mandamus action that he asserts in this case: that the police did not legally possess the methamphetamine used in his reverse sting. "The legal basis Gober asserted for his petition was the requirement in OCGA § 16-13-49 (u) (1) that any forfeited contraband that is dangerous to the public be destroyed or sent to an appropriate agency for medical or scientific use." Id. at 20.[29]

The Supreme Court implicitly upheld the trial court's grant of mandamus requiring the Gwinnett County Police Department to destroy all the contraband in its drug safe. Noting that the evidence established that the owners of the drugs held in the safe could not be determined, the Supreme Court found that the drugs had been summarily forfeited pursuant to OCGA § 16-13-49 (y), which provides that "[c]ontrolled substances . . . whose owners are unknown are summarily forfeited to the state."[30] And the court concluded that "their destruction was mandated by OCGA § 16-13-49 (u) (1)." Gober, 272 Ga. at 22 (1).

Nevertheless, the court applied an exception to this mandatory destruction rule to the methamphetamine used in Gober's case. Gober, 272 Ga. at 23 (3). The Supreme Court held that those drugs were specifically exempted from destruction under "the very statutory provision on which [Gober's] mandamus action was premised." Id. OCGA § 16-13-49 (u) (1) exempts contraband that is still " 'needed for evidentiary purposes.' " Id. Gober had already been convicted at the time of the mandamus ruling. But because his conviction was subject to appeal, the Supreme Court found that the drugs might still be needed for evidentiary purposes in the event of a new trial. The court concluded that those particular drugs were, therefore, exempted from destruction. Id.

But that holding does not resolve the question at issue here. While I agree with the majority that the Supreme Court held in Gober that "there is no prohibition in the Controlled Substances Act

---

[29] OCGA § 16-13-49 (u) (1) provides:
Whenever property is forfeited under this article, any property which is required by law to be destroyed or which is harmful to the public shall, when no longer needed for evidentiary purposes, be destroyed or forwarded to the Division of Forensic Sciences of the Georgia Bureau of Investigation or any other agency of state or local government for destruction or for any medical or scientific use not prohibited under the laws of the United States or this state.

[30] OCGA § 16-13-49 (y) reads:
Controlled substances included in Schedule I which are contraband and any controlled substance whose owners are unknown are summarily forfeited to the state. The court may include in any judgment of conviction under this article an order forfeiting any controlled substance involved in the offense to the extent of the defendant's interest.

against the retention and *legal* use of seized controlled substances . . . while acting in the course of their official duties, . . . *so long as the owner of the drug is known* and forfeiture proceedings have not been commenced,"[31] I disagree that this holding answers the question before us now.[32]

The majority appears to discount the further finding of the *Gober* court that the owner of the drugs in this case was unknown and thus that the drugs fell into one of the two categories of drugs subject to summary forfeiture. Instead, the majority relies upon qualifying language that the reason the owner of the drugs in this case was unknown was "primarily because the state of the records maintained by the department rendered [them] unknown." *Gober*, 272 Ga. at 24 (4). But the Supreme Court did *not* hold that the Gwinnett County Police Department's sloppy record-keeping somehow removed the drugs at issue from the category of contraband subject to forfeiture.

To the contrary, the court agreed that the drugs in the Gwinnett County safe were subject to summary forfeiture and their destruction "mandated." *Gober*, 272 Ga. at 22 (1). It carved out an exception for the specific methamphetamine in this case only to preserve it for evidentiary purposes pending an appellate ruling in the criminal case. But contrary to the majority's apparent assumption, the Supreme Court in its mandamus case never addressed the issue of whether methamphetamine that is subject to summary forfeiture and mandated destruction can legally be used in a reverse sting operation. That is the issue before us now.

In addressing that issue, I am bound by the finding in the *Gober* decision that the drugs held in the Gwinnett police safe were subject to mandatory destruction. It follows, therefore, that the methamphetamine in this case should have been destroyed before it was used in the reverse sting against Gober.

An examination of the purposes behind the forfeiture statute confirms this conclusion. That statute was passed, in part, to provide for "the prompt disposition of property subject to forfeiture under the statute." (Citations and punctuation omitted.) *Yoder v. State*, 211 Ga. App. 226, 228 (438 SE2d 689) (1993). And although the statute sets forth detailed procedures to be followed with regard to the disposition of most kinds of property, its treatment of illegal and dangerous drugs is markedly different. Schedule I drugs and drugs whose owner is unknown are to be summarily forfeited and destroyed.

---

[31] (Emphasis supplied.) *Gober*, 272 Ga. at 25 (4).

[32] Thus, I would not, as the majority asserts, hold that the police could never use seized contraband in a reverse sting operation. I acknowledge that the Supreme Court has upheld the use of a limited class of drugs in reverse stings, but the drugs in this case do not fall within that approved class.

*Gober*, 272 Ga. 20. This is because, as the statute provides, such drugs are deemed harmful to the public. OCGA § 16-13-49 (u) (1). This statutory scheme underlines the legislature's strong policy of ridding the state of illegal drugs.

And nothing in the statute authorizes the police to maintain and use such drugs in reverse sting operations. While the statute provides that these drugs must be preserved if they are needed as evidence in a criminal proceeding, it does not provide that the drugs can then be recycled to create new criminal proceedings. And although the statute does authorize the use of the drugs for certain limited purposes — scientific and medical — it makes no similar provision for their use in crime prevention. Under the rule of statutory construction inclusio unius exclusio alterius (inclusion of one implies exclusion of others), I conclude that the legislature did not consider reverse stings, or any other crime prevention techniques, to be a legitimate use of such illegal substances. See *Blackwell v. State*, 237 Ga. App. 896, 897 (516 SE2d 787) (1999).

Therefore, I believe that the police in this state should not retain possession of drugs subject to the mandatory destruction requirements of OCGA § 16-13-49 (u) (1). After the drugs' evidentiary use is exhausted for the case in which they were seized, they should be destroyed and should not be used to manufacture future prosecutions, unless and until the General Assembly authorizes their use in such a fashion.

DECIDED MARCH 30, 2001 —
RECONSIDERATION DENIED APRIL 12, 2001 ▮▮▮▮▮

*Peevy & Lancaster, Gregory W. Lancaster*, for appellant.
*Daniel J. Porter, District Attorney, Dawn H. Taylor, Assistant District Attorney*, for appellee.

