## A00A2037. GIRALDO v. THE STATE.
## A00A2038. BRUTUS v. THE STATE.
(547 SE2d 651)

MILLER, Judge.

Giraldo and Brutus were indicted for trafficking in cocaine (more than 400 grams) and possessing cocaine with intent to distribute, arising out of a "reverse sting" operation.[1] The issue in this case is

---

[1] "In reverse sting operations, undercover police officers pose as drug dealers in an area known for drug activity and sell cocaine to purchasers. Following the purchase or attempted

whether the court erred in not dismissing the indictments or suppressing the contraband where the cocaine used for the reverse sting operation came from the State crime laboratory where records were kept of its origin and owners.

Giraldo and Brutus do not argue that the reverse sting operation itself violated their rights. Rather, in eight separate enumerations, they contend that the cocaine used in the operation was illegal because it should have been earlier destroyed pursuant to OCGA § 16-13-49 (y)[2] and (u) (1).[3] They rely upon the recent case of *Dean v. Gober*,[4] a civil mandamus action, which held that where no forfeiture proceeding has been commenced against them, non-Schedule I controlled substances without a known owner are summarily forfeited to the State and must be destroyed.[5] Accordingly, Giraldo and Brutus contend that their indictments should be dismissed and/or all evidence of cocaine suppressed because use of the illegally stockpiled cocaine constitutes outrageous government conduct.[6]

At the hearing on the motion, Terry Mills, a deputy director with the Georgia Bureau of Investigation (GBI), testified that the State crime laboratory maintains a supply of contraband that it loans out to law enforcement agencies, both federal and state, for reverse sting operations. The powder cocaine maintained by the lab comes from two cases dating from 1982 and 1985. In each case, approximately 1,000 kilograms of cocaine had been thrown from an airplane.

Mills testified that when this cocaine was no longer needed for evidentiary purposes in connection with the cases against the pilots, the laboratory kept it for future use in reverse stings. The laboratory has verified that these substances are cocaine. Law enforcement authorities may borrow cocaine from the laboratory for use in reverse stings. If the operation leads to criminal prosecution, the cocaine is returned to the laboratory, assigned a case number, and reanalyzed to verify what the substance is. An official report on the identity of

---

purchase, the buyer is arrested for possession of cocaine." *Givens v. State*, 211 Ga. App. 290, 291 (2) (439 SE2d 22) (1993), rev'd on other grounds, 264 Ga. 522 (448 SE2d 687) (1994).

[2] OCGA § 16-13-49 (y) provides: "Controlled substances . . . whose owners are unknown are summarily forfeited to the state."

[3] OCGA § 16-13-49 (u) (1) provides:

Whenever property is forfeited under this article, any property which is required by law to be destroyed or which is harmful to the public shall, when no longer needed for evidentiary purposes, be destroyed or forwarded to the Division of Forensic Sciences of the Georgia Bureau of Investigation or any other agency of state or local government for destruction or for any medical or scientific use not prohibited under the laws of the United States or this state.

[4] 272 Ga. 20 (524 SE2d 722) (2000).

[5] Cocaine is a Schedule II controlled substance. OCGA § 16-13-26 (1) (D).

[6] See, e.g., *United States v. Russell*, 411 U. S. 423 (93 SC 1637, 36 LE2d 366) (1973); *United States v. Twigg*, 588 F2d 373 (3rd Cir. 1978); *Greene v. United States*, 454 F2d 783 (9th Cir. 1971); *State v. Williams*, 623 S2d 462 (Fla. 1993).

the substance is then prepared, and the cocaine becomes evidence for use in the case.

In 1999, the laboratory loaned three kilograms of cocaine from this supply to the DeKalb County Drug Task Force for use in a reverse sting. Both Giraldo and Brutus were arrested in the operation. The cocaine was returned and assigned a case number, and an official report was prepared.

The trial court examined the testimony presented at the hearing and concluded that there was sufficient evidence to meet the requirements under *Dean v. Gober* that "the owner of the drug [be] known" and that forfeiture proceedings had not been commenced against those drugs. Therefore, the court concluded, the State crime lab was lawfully in possession of the cocaine used in the reverse sting operation against Giraldo and Brutus.

We hold the court did not err in refusing to dismiss the indictments or to suppress the contraband based on such evidence. First, since the State maintained records and showed the trial court who owned the cocaine used in the reverse sting operation, the cocaine was not summarily forfeited to the State and thus the State was not immediately required to destroy same. Second, even if the State were required to destroy the cocaine, the State's conduct here in failing to meet this obligation and in using the cocaine in a common reverse sting operation does not rise to the level of outrageous conduct that violated fundamental notions of due process and that prejudiced the defendants. Regardless of where the State obtained the cocaine, defendants were not authorized to purchase same.

1. Although the provision in the forfeiture statute requiring destruction of the cocaine was not enacted until 1991, it applies to the cocaine acquired by the crime lab in 1982 and 1985.

OCGA § 16-13-49 is part of the Georgia Controlled Substances Act, which was enacted in 1974, but section 49 was rewritten in 1991 and made effective on July 1 of that year.[7] The subsection requiring destruction of certain property was not a part of the earlier version.[8] But the revised Code section states that it applies to property recovered prior to the effective date if "such property was subject to forfeiture under the laws of this state at the time such act or omission occurred."[9] Under former Code Ann. § 79A-828 (now OCGA § 16-13-49), the following were subject to forfeiture: "All controlled substances and marijuana which have been manufactured, distributed, dispensed, held, or acquired in violation of this article." And the GBI director testified that the contraband acquired in both the 1982 and

---

[7] See Ga. L. 1974, p. 221 et seq.; Ga. L. 1991, p. 886 et seq. and § 5, p. 913.
[8] See Code Ann. § 79A-828 (1984).
[9] Ga. L. 1991, § 4b, p. 913.

1985 cases is "for lack of a better term, boat cocaine; in other words, cocaine that's been manufactured and prepared down in Colombia and smuggled into the U. S." It follows that the cocaine was subject to forfeiture under the earlier version of the statute and that, therefore, the revised statute applies to the 1982 and 1985 airplane cocaine.

2. The cocaine was not summarily forfeited to the State under OCGA § 16-13-49 (y) and therefore was not subject to immediate destruction. *Dean v. Gober*[10] expressly held that so long as the police keep records of the ownership of non-Schedule I drugs confiscated in previous investigations and so long as forfeiture proceedings have not been commenced, police are authorized to retain the drugs and to use them in reverse sting operations. Here no forfeiture proceedings had been commenced, and the State maintained records showing the origin of the cocaine (a Schedule II drug[11]) held by the State crime lab. The State presented this evidence of record-keeping to the trial court, which, based on the evidence, found as fact that the State had shown the owner of the cocaine. As there was some evidence to support this finding, we will not disturb it.[12] Therefore, the State was fully authorized to use these drugs in this particular reverse sting operation.

The special concurrence reads OCGA § 16-13-49 to conclude, contrary to *Dean v. Gober*,[13] that the State can *never* retain illegal drugs for reverse sting operations because no one can ever "own" these drugs. As explained in *Dean v. Gober*,[14] the obligation of the State is simply to maintain accurate records as to the origin of the drugs; an esoteric analysis interpreting away the ability of anyone to "own" these drugs simply misses the mark, since law enforcement officers are authorized by OCGA § 16-13-35 (c) (4) to *possess* controlled substances while acting in the scope of their official duties.[15]

3. Even if the State were obligated to destroy the cocaine at issue, the State's failure to do so does not violate any fundamental notions of due process such that a dismissal of the indictments or a suppression of this contraband would be required. As explained in *Gober v. State*,[16] such sins of omission by the police come nowhere near the affirmative outrageous conduct that must be shown to constitute a violation of due process requiring a bar to prosecution or justifying a dismissal of these indictments or a suppression of this contraband. The origin of the drugs would in no way undermine a

---

[10] Supra, 272 Ga. at 23-24 (4).
[11] See OCGA § 16-13-26 (1) (D).
[12] See *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).
[13] Supra, 272 Ga. at 23-24 (4).
[14] Id.
[15] Id. at 24-25 (4).
[16] 249 Ga. App. 168 (547 SE2d 656) (2001).

finding that these defendants, without legal authorization, knowingly purchased or possessed the cocaine.

Nevertheless, we do not wish to promote law enforcement's collection and storage of excessive amounts of illegal drugs. The better practice would be to create a strict procedure governing the retention of illegal drugs from prior investigations, which procedure would set forth the amount of drugs that may be retained and the length of time they may be retained. Also, there should be strict controls on the use of these drugs in law enforcement operations such as the reverse sting operation here. For this reason, we invite and encourage the legislature to develop such guidelines.

*Judgments affirmed. Blackburn, C. J., Andrews, P. J., Ruffin, Ellington and Mikell, JJ., concur. Pope, P. J., concurs specially.*

POPE, Presiding Judge, concurring specially.

Although I concede that the improper use of drugs that should have been destroyed does not rise to the level of outrageous conduct as described in the case law, the forfeiture statute clearly required destruction of the cocaine used against Giraldo and Brutus long before it was used against them in a reverse sting. And, I cannot condone use of such drugs under the circumstances. If the legislature intended to allow the practice, it should revise the statute to make it clear. See *Gober v. State*, 249 Ga. App. 168 (547 SE2d 656) (2001) (Pope, P. J., concurring specially). Also, I write separately to address two other matters.

First, *Dean v. Gober*, 272 Ga. 20 (524 SE2d 722) (2000), did not, as claimed by the majority, hold that so long as the police keep ownership records for confiscated non-Schedule I controlled substances, they are authorized to use them in reverse stings. Rather, it held that those substances can be used if they have a known owner, but controlled substances whose owners are unknown are summarily forfeited and must be destroyed. Certainly it follows that the failure to keep ownership records would preclude showing the identity of an owner, but keeping ownership records was not the determinative fact. What if the records they keep show no owner? Thus, in this case, the simple fact that the Georgia Bureau of Investigation has records is not sufficient. There still must be proof of a known owner in order to exempt non-Schedule I drugs from forfeiture and destruction.

The only evidence in this case to support the conclusion that the stockpile of cocaine that was being held for use in reverse stings had a known owner is very weak. The GBI deputy director testified only that his records would show who the owner was, but he did not know the names of the owners himself or present his records as evidence. On this basis alone, the trial court concluded there was a "known owner" sufficient to satisfy the statute.

Although on appeal the slight evidence presented might be sufficient to uphold that factual finding, because the drugs at issue in this case were admittedly illegally manufactured and possessed, there can be no owner of the controlled substances, and therefore, they should have been destroyed.

OCGA § 16-13-49 (a) (7) provides that a person is an owner if they have "an interest in [the] property." OCGA § 16-13-49 (d) (1) provides that all controlled substances "that have been manufactured, distributed, dispensed, possessed, or acquired in violation of" the Georgia Controlled Substances Act "are declared to be contraband and no person shall have a property right in them." And the GBI deputy director testified that the contraband acquired in both the 1982 and 1985 cases is "for lack of a better term, boat cocaine; in other words, cocaine that's been manufactured and prepared down in Colombia and smuggled into the U. S." Therefore, because the two stashes of cocaine in the GBI laboratory are illegal "boat cocaine," no person has a property right in them; they can have no owner.

It is true that in *Dean v. Gober*, the Supreme Court recognized that non-Schedule I controlled substances can have a known owner. 272 Ga. at 24 (4). Indeed, OCGA § 16-13-35 (c) (4) authorizes certain persons to, among other things, manufacture controlled substances provided they are properly registered. And deputy director Terry Mills admitted that it is possible to purchase pharmaceutical-grade cocaine. Thus, properly registered persons would be examples of known owners of a controlled substance. But, construed together, OCGA § 16-13-49 (d) and (e) mean that there can be a known owner only if the substance has not been manufactured, distributed, dispensed, possessed, or acquired in violation of the Georgia Controlled Substances Act.[17] In this case, the substance was illegal cocaine, and therefore, there can be no known owner.

Also, OCGA § 16-13-35 (c) (4) allows officers and employees of the state while acting in the course of their official duties to possess controlled substances. But, read together with subsections (d), (u) (1), and (y) of OCGA § 16-13-49, this statute means that the officers must destroy all controlled substances that have been manufactured, distributed, dispensed, possessed, or acquired in violation of the Georgia Controlled Substances Act that are no longer needed for evidentiary purposes in the matter in which they were acquired, although they may possess any drugs that do not fall into these categories.

*Dean v. Gober* did not address this specific point. It held only that the police may use confiscated drugs where there is a known

---

[17] OCGA § 16-13-49 (e) essentially provides that where the confiscated property belongs to a legitimate and innocent owner, that property is not subject to forfeiture.

owner. But it did not consider or construe OCGA § 16-13-49 (d) and its clear pronouncement that no person can own illegally manufactured drugs. Nor did it consider who can be an owner of Schedule II controlled substances. Although the majority attacks this writer's construction of OCGA § 16-13-49 (d) and (e), it does not offer any explanation of the meaning of those Code subsections. The majority's conclusions are not based on reading the statute as a whole.

In short, because the cocaine stored by the GBI is illegally manufactured cocaine, it cannot have a known owner. Under *Dean v. Gober*, because the owner of the cocaine stockpile was unknown, those drugs had been summarily forfeited pursuant to OCGA § 16-13-49 (y) and "their destruction was mandated by OCGA § 16-13-49 (u) (1)." *Dean v. Gober*, 272 Ga. at 22 (1). It was a violation of the amended forfeiture statute for the GBI to keep it because it was no longer needed for evidentiary purposes in connection with the 1982 and 1985 incidents. Accordingly, the cocaine should have been destroyed long before some of it was used in a reverse sting against Giraldo and Brutus.

DECIDED MARCH 30, 2001 —
RECONSIDERATION DENIED APRIL 12, 2001 ▮▮▮▮▮▮▮▮

*William G. Quinn III*, for appellant (case no. A00A2037).
*Stephen T. Maples, Bernard Knight, Karlyn Skall*, for appellant (case no. A00A2038).
*J. Tom Morgan, District Attorney, Kristin M. Childers, Gregory K. Schwarz, Assistant District Attorneys*, for appellee.