## 39243. GREEN v. THE STATE.

MARSHALL, Presiding Justice.

Earl Green appeals from his conviction of malice murder, for which he was sentenced to life imprisonment. (For the opinions in his co-defendants' appeals, see *Mulkey v. State,* 250 Ga. 444 (298 SE2d 487) (1983); *Salmon v. State,* 249 Ga. 785 (294 SE2d 500) (1982)). Briefly, although the sufficiency of the evidence to authorize the conviction is not argued, there was evidence that Green had formed a conspiracy — with co-defendants Harold Mulkey and Robert Lee "Bo" Salmon — to have Green's stepson, James Henry Ridley, Jr. (the victim), Green's wife, and the victim's two brothers murdered in order to collect his stepson's life insurance proceeds and his wife's real property; that Green, through his hired co-conspirators, had made previous unsuccessful attempts to murder the victim by drowning, shooting, drug overdose, poisoning, and forcing him off a mountain in a burning car; that the conspirators finally succeeded in killing the victim by shooting him in the head with a high-powered rifle (Mulkey being the triggerman).

1. Enumerated errors 1, 2, 4, 5 and 7 all pertain to a tape-recorded conversation between the appellant and co-defendant Salmon's wife, Charlotte Salmon, made by a "body bug" placed on Mrs. Salmon's person with her consent in cooperation with the FBI.

(a) The appellant contends in enumerated error 1 that the trial court erred in denying his pretrial motion to inspect, examine, and test this tape, which was admitted as physical evidence at the trial. In *Sabel v. State,* 248 Ga. 10, 17 (6) (282 SE2d 61) (1981), we held that: "A criminal defendant on trial for his liberty is entitled on motion timely made to have an expert of his choosing, bound by appropriate safeguards imposed by the court, examine *critical* evidence *whose nature is subject to varying expert opinion."* (Emphases supplied.) "Whether the evidence is 'critical' is discussed in White v. Maggio, 556 F2d 1352, 1356, 1358 (5th Cir. 1977), and depends upon whether a specific or general request was made." Id., p. 18. The request here was general, specifying "all items of physical evidence that are pertinent to this case and/or in their (State of Georgia and U. S. government) possession and control for inspection, examination and testing by experts designated by the defendant, whether or not the prosecution

intends to introduce, or attempt to introduce, said evidence at trial." Therefore, the tape recording will not be deemed critical here. In addition, unlike the cases of *Sabel v. State,* 248 Ga. 10, supra, p. 17 and cits., including *Patterson v. State,* 238 Ga. 204 (232 SE2d 233) (1977), the question of the identity of a critical or prohibited substance being determinative of guilt or innocence, is not here involved. There was ample testimony establishing the veracity of the conversation and the chain of custody of the tape, by one of the parties to the conversation and by the FBI agent who compared a duplicate recording with the original one.

(b) In enumerated error 2, the appellant asserts that the trial court erred in denying his motion to suppress the tape evidence without conducting an evidentiary hearing on the motion. The record shows that a hearing was held prior to trial, at which time the judge considered both the appellant's motion and the state's motion to dismiss the appellant's motion. Prior to the state's tender of the recording at trial, the judge held an additional hearing, and heard arguments and permitted cross-examination as to the admissibility of the tape. A review of the testimony shows that the tape was admissible under OCGA § 16-11-66 (Code Ann. § 26-3006), which allows a third party to intercept, record and divulge conversations where the conversation is in furtherance of a crime and one party to the conversation consents. *Mitchell v. State,* 239 Ga. 3 (235 SE2d 509) (1977); *Humphrey v. State,* 231 Ga. 855 (204 SE2d 603) (1974). The appellant's contention — that the admission of this evidence violated the Georgia Invasion of Privacy Act (OCGA § 16-11-60, Code Ann. § 26-3009) (argued in enumerated error 4); the federal Omnibus Crime Control and Safe Streets Act of 1968 (18 USCA §§ 2510-2520); Art. I, Sec. I, Par. X, Ga. Constitution of 1976 (Code Ann. § 2-110); and the Fourth Amendment of the U. S. Constitution — is without merit.

(c) Enumerated error 5 asserts that the duplicate of the original tape was inadmissible on the grounds of a lack of showing of its authenticity and correctness, improper foundation, inaudibility of portions thereof, and irrelevancy. The record shows that the seven-step foundation, as approved in *Central of Ga. R. Co. v. Collins,* 232 Ga. 790 (3) (209 SE2d 1) (1974), was met here, by extensive questioning of FBI personnel and the party to the conversation, Charlotte Salmon. Although some parts of the duplicate tape may have been inaudible, the appellant does not aver that there was anything favorable to him in such "gaps." See *Harris v. State,* 237 Ga. 718, 725 (5) (230 SE2d 1) (1976). And, although there may have been some irrelevant material on the tape, in order for the recorded conversation to make sense and be heard in the proper context, it was necessary to play the tape to the jury in its entirety.

(d) In enumerated error 7, the appellant asserts that his character was improperly placed in issue through his references on the tape recording to having burned a barn, having attempted to "fix" a jury in the "Bo" Salmon case, having concealed a stolen car, and his plan to threaten an individual for nonpayment of money. The tape recording showed the appellant's continuing participation in a conspiracy through his efforts to raise money to assist his co-defendant, Salmon, and to pay Salmon in accordance with the terms of their conspiracy agreement. The taped testimony corroborated the testimony of Charlotte Salmon pertaining to the appellant's agreement with Salmon and Mulkey. Additionally, references in the tape to raising money for Salmon illustrate the appellant's mental process and intent, indicating his willingness to hire another to perpetrate a murder. References to his attempt to fix Salmon's jury demonstrate Salmon's willingness to continue the coverup of the murder. Although some portions may have been irrelevant, the jury was entitled to hear the entire statements of the appellant in the full context in which they were spoken, as we held in Division 1(c), supra.

2. In enumerated error 3, the appellant asserts as error the dismissing of his motion to suppress evidence (two jury lists, which were admitted to prove the appellant's attempt to "fix" Salmon's jury) obtained as a result of an alleged illegal search. A review of the contents of the motion reveals that it does not comply with the requirements of OCGA § 17-5-30 (Code Ann. § 27-313). The appellant contends that the notary public, ex-officio justice of the peace who issued the warrant had not been properly appointed by the grand jury. We find this contention to be without merit. Under Code Ann. § 24-501, which was in effect at the time of the appellant's trial, ex-officio justices of the peace were appointed, not by the grand jury, but by superior court judges.

3. The trial judge did not err, as contended in enumerated error 6, in limiting cross-examination as to witness Ensley's agreements with the federal government to testify in other cases unrelated to the present case. We have answered this contention unfavorably to the appellant in *Mulkey v. State,* 250 Ga. 444, supra, (2).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 25, 1983 —
REHEARING DENIED MARCH 1, 1983.

*Donald W. Johnson,* for appellant.
*Jack O. Partain III, Assistant District Attorney, Michael J. Bowers, Attorney General, Nicholas G. Dumich, Assistant Attorney*

*General,* for appellee.