## 67041. KELLEY v. THE STATE.

BIRDSONG, Judge.

Mickie (Mickey, Mike) Kelley was convicted of two counts of violation of the Georgia Controlled Substances Act, sale of cocaine. He enumerates seven errors below. *Held:*

1. Kelley contends the trial court blatantly erred in denying his motion for continuance, in view of the "extraordinary circumstances" then confronting the appellant. It appears that appellant and three other members of his family were indicted at the same term of the Burke County Grand Jury on drug charges. Appellant's brother Charleston Kelley had, a few weeks before appellant's trial, been tried and convicted in Burke County and sentenced to 120 years incarceration and an $80,000 fine. There was relatively extensive newspaper coverage of Charleston Kelley's trial and conviction. Appellant also contends the array of traverse jurors summoned for service in appellant's trial was composed substantially of the very same jurors comprising the array from which a jury had been selected to try the brother Charleston Kelley. Appellant submits that the extensive voir dire conducted prior to the brother's trial aroused such hostility that continued questioning along similar lines at appellant's trial "would likely have prejudiced" appellant's case.

We find no error. There is no authority or logic for the proposition that a defendant may fail to conduct a proper voir dire because he imagines he will irritate prospective jurors, so that no prejudice can appear in the record, and then subsequently complain of the prejudice that "would likely have" resulted if he had conducted the voir dire. There is no evidence of jury bias or prejudice in the record, and no evidence that appellant attempted to discover any. Newspaper coverage of the trial and conviction of Charleston Kelley did little more than briefly mention that appellant Mike Kelley, and certain named others, were also charged as a result of the same investigation. The "principles of justice" (OCGA § 17-8-33 (Code Ann. § 27-2002)) do not include the mere suggestion that members of a family, or other defendants, charged with similar or related crimes cannot receive a fair trial unless they are tried at separate terms, by jurors who have never been questioned as to their potential prejudice, and unless there is no newspaper or other public mention of the defendant's having been charged with crimes similar to or related to those of which a family member has been convicted. We find no actual prejudice or harm in this case in the adherence to the law that a defendant be tried at the same term of indictment (OCGA § 17-8-33 (Code Ann. § 27-2002); *Collier v. State,* 244 Ga. 553 (1) (261 SE2d 364)), and no abuse of discretion in the trial court's denial of Mike

Kelley's motion for continuance. *Young v. State,* 237 Ga. 852, 855 (230 SE2d 287).

2. The appellant was not entitled to a mistrial on grounds that the state and witnesses made references to the fact that a part of the chain of custody (which was generally challenged by appellant) could not be directly proved because GBI Agent Frank Ellerbe "unfortunately is not alive to testify," and particularly at one point stated on direct examination that "Agent Frank Ellerbe was murdered last Wednesday in McIntosh County." No implication or suggestion was made that appellant was in any way connected with Agent Frank Ellerbe's death. In any case, the trial court rebuked the district attorney and witness and gave the jury proper curative instructions that "[Y]ou are not to infer anything hurtful to the defendant by [the response that Agent Ellerbe had been murdered]. The defendant in no way was involved in the death of Agent Ellerbe; and you should not infer from anything that has been said that he was involved in that death. The purpose of the testimony was to allow the jury to know why Agent Ellerbe is not here [to testify to some part of the chain of custody]. . . ." See OCGA § 17-8-75 (Code Ann. § 81-1009).

3. We find no error in the trial court's refusal or failure to make a preliminary determination as to the admissibility of certain taped conversations and transcripts of taped conversations, nor the sending out of the transcripts with the jury.

The appellant on appeal has asserted that the taped conversations were so obscure or hard to understand, that it was fatal error to admit the tapes and to permit the transcripts to be admitted as the only intelligible evidence and thus allow the transcripts to corroborate the poor aural rendition played at trial. However, all three judges on this panel have listened to the tapes and are in agreement that the tapes are not of sufficient clarity and audibility to be used as evidence *without the transcripts.*

Two or three different conversations were taped, along with unrelated material, on portions of a small concealed NAGRA device, and were then extracted from the entire tape by transfer to another cassette and transcribed for the purpose of clarifying some of the colloquial and sub-culture talk. The state's witnesses fully described the taping and transcription procedure and verified the authenticity of the transcripts. Moreover, the undercover agent who participated in the taped conversations, corroborated the taped and transcribed evidence and verified its authenticity. The appellant made no allegation or suggestion to the trial court that the tapes and transcripts were not legitimate nor correctly made and for that reason not admissible; nor does he make any now. The appellant's

complaint is that the trial court's failure to hold a preliminary hearing as to the admissibility of the evidence was error according to *Lynch v. State,* 143 Ga. App. 188 (1) (238 SE2d 122), and was fatal error inasmuch as the inaudibility and insufficient clarity of the tapes rendered them inadmissible. This complaint is without merit.

In *Mayor &c. of Savannah v. Palmerio,* 135 Ga. App. 147, 151 (217 SE2d 430), which was cited in *Lynch,* supra, for authority that a preliminary hearing as to admissibility of tapes must be held upon request, we held that on request such a hearing should be conducted and that certain requisites of admissibility must be found. We furthermore noted with approval the requisites set forth by the Alabama appellate courts, that "(2) If the recording is . . . inaudible, its admissibility should be questioned. (3) If the material portions are inaudible, the recording should be rejected *if it is the only evidence offered as to the statement.* (4) If the parties present when the recording was made testify to the statements made, the recording even though inaudible in parts, should be admitted as corroboration of the witnesses' testimony." (Emphasis supplied.) See esp., *Green v. State,* 250 Ga. 610, 611 (299 SE2d 544).

All of the requisites for admissibility set forth in *Mayor &c. of Savannah v. Palmerio,* supra, were shown at the trial of this case. To any extent that the tapes themselves were of insufficient clarity, they still were corroborated by, and served as corroboration for, the evidence given by the agent who was present during the conversations. See *Green,* supra. The requisites for validity of the transcription process were likewise met in full. Thus, the evidence was in fact admissible according to all the tests set forth in *Mayor &c. of Savannah v. Palmerio,* supra, and *Green,* supra. The failure to determine admissibility prior to trial cannot be cause for reversal because the evidence was in fact admissible. See *Brooks v. State,* 141 Ga. App. 725, 731 (234 SE2d 541).

It has been held by our Supreme Court that where proper foundation has been laid, the transcripts of the tapes may be read by the jury while the tape is being played, *Burke v. State,* 248 Ga. 124, 125 (281 SE2d 607), but upon proper objection, the transcript would not be allowed to go to the jury room with the jury. *Gribble v. State,* 248 Ga. 567, 572 (284 SE2d 277). However, no such objection was made in this case; the objection below addressed only the request that the trial court listen to the tapes and determine their authenticity prior to the tapes and the transcripts being admitted. The proper objection not having been raised in the trial below, appellant may not raise this issue in this context for the first time on appeal. *Pulliam v. State,* 236 Ga. 460, 463 (224 SE2d 8); *Moore v. State,* 138 Ga. App. 902 (2) (227 SE2d 809).

4. Neither were the tapes inadmissible as being the fruit of an illegal search and seizure, on grounds that appellant had a reasonable expectation of privacy within his residence and as to any conversations he held in that protected area. *Shuman v. State,* 155 Ga. App. 300 (271 SE2d 18). The taped evidence was no more than evidence as to conversations in which the undercover agent had the same right as any party to a conversation to repeat verbally or to repeat electronically. *O'Dillon v. State,* 245 Ga. 342 (2) (265 SE2d 18); *Goodwin v. State,* 154 Ga. App. 46, 48-49 (267 SE2d 488); *Quaid v. State,* 132 Ga. App. 478, 489 (208 SE2d 336).

5. Appellant contends the trial court erred in denying a mistrial after two GBI agents violated the rule of sequestration and thereby denied appellant his due process. The record shows that during a break in proceedings one GBI agent who had been excused approached a GBI agent then on the stand and exchanged a very few words. The agents stated that the first agent had merely asked the other to meet him outside, or wait for him, when he finished his testimony. We find no abuse of the trial court's discretion in determining that what occurred there was no more than "a mere irregularity," and there was no contamination of testimony or prejudice to the defendant which denied his due process and violated the purpose of the sequestration rule. OCGA § 24-9-61 (Code Ann. § 38-1703); *Jordan v. State,* 247 Ga. 328, 346 (276 SE2d 224).

6. The trial judge's statement in his charge to the jury that "[t]here is no evidence that the defendant would be a person authorized by law to distribute cocaine," in accordance with Georgia Controlled Substances Act, was not error in law or fact. *Bloodworth v. State,* 129 Ga. App. 40 (1) (198 SE2d 341).

7. The appellant was not entitled by law to a jury charge on entrapment under *Gregoroff v. State,* 248 Ga. 667 (285 SE2d 537). Appellant made no such defense, and the state's evidence did not raise it. The state's evidence showed that in a drug investigation focused on the brother Charleston Kelley, the undercover agents frequently visited Charleston Kelley's house and observed large numbers of cars stopping and leaving within short periods of time after the occupants of the cars had visited briefly inside the residence and emerged with paper bags. The agents did not testify where appellant lived, but only that he was very frequently at his brother's house. The taped conversations show that appellant Mike Kelley showed no hesitation in discussing the sale of cocaine with the undercover agent. Appellant only stated he could not sell large amounts of cocaine and that the buyers would have to wait for appellant's brother for large amounts; the state's taped and verbal evidence reveals the appellant showed no reluctance and required no

undue persuasion, incitement, or inducement to sell "small pieces . . . twenty cent, dime [$20, $10] like that. . . . For tootin', you know." There was absolutely no evidence from which to infer that appellant would not have sold cocaine but for the officer's request.

*Judgment affirmed. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED OCTOBER 12, 1983 —
REHEARING DENIED NOVEMBER 18, 1983 — 

*Preston B. Lewis, Jr., Preston B. Lewis III,* for appellant.
*Sam B. Sibley, Jr., District Attorney, Charles R. Sheppard, Assistant District Attorney,* for appellee.