## A02A0229. PIERCE v. THE STATE.
(564 SE2d 790)

SMITH, Presiding Judge.

Michael James Pierce was indicted for the aggravated battery of Nick Wilkerson and the murder of Eletha Diane Sherrod. A jury convicted Pierce of aggravated battery and involuntary manslaughter. Following the denial of his motion for new trial, Pierce filed this appeal in which he contends that the trial court erred in two evidentiary rulings and in restricting the scope of its recharge to the jury. Because we find no merit in these contentions, we affirm.

On appeal, the evidence must be viewed in a light most favorable to the verdict, and Pierce no longer enjoys the presumption of innocence. *Pollard v. State,* 230 Ga. App. 159 (495 SE2d 629) (1998). The evidence, when viewed in that manner, established that just hours before the crimes, Pierce had threatened to kill Melody Smith, his former girlfriend, and anyone she dated. In separate conversations, Pierce warned Smith and her mother and also told an acquaintance that if he caught Smith with another man he would kill them both. At the time of the threats, Smith was living at home with her child, her mother, three sisters, a niece, and her brother.

On the night of the shootings, Pierce discovered Smith in the company of Wilkerson standing next to Wilkerson's car. From a wooded area outside Smith's home, Pierce fired several shots from a semi-automatic pistol at them. He then opened fire with a shotgun, seriously wounding Wilkerson who was pinned inside his car by gunfire. As Wilkerson tried desperately to shift his car into reverse, Pierce continued to shoot at him. Running low to the ground, Smith crouched down next to the car using it for cover.

One of Smith's sisters, Sherrod, heard the gunshots from inside the house and ran out onto the screened porch. Pierce fired his shotgun at the porch, killing Sherrod. Sherrod died at the scene from gunshot wounds to her head. Although no one was able to see the shooter, who fled into the darkness and the woods, Pierce immediately was the prime suspect. Shortly before the shootings, Sherrod had told her mother that she saw Pierce's car pass by their house and Roberta Smith confirmed that information. Just after the shootings, a neighbor spotted Pierce's distinctive purple Mustang traveling fast in the opposite direction about a half-mile from the area.

While a manhunt was under way, Pierce voluntarily turned him-

self in the next day to Sheriff Bobby Womack from nearby Jenkins County. Womack testified that while he was sitting in his office Pierce entered the room upset and crying, saying he "did not mean to kill her." Womack recalled that Pierce walked across the room and then "fell on the desk with tears and all in his eyes, and [said], 'I did not mean to shoot her, I did not mean to kill her.'" Pierce collapsed between the sheriff's desk and a wall, and the sheriff helped lift Pierce back up. As Pierce continued talking, Womack interrupted him saying, "No, I'd rather not hear it." Womack did not question Pierce and summoned his deputy to inform Pierce of his *Miranda* rights. Pierce said nothing further.

Pierce was transported back to Emanuel County, where he agreed to give a statement. Although the custodial interview was audiotaped, a several-minute segment in that audiotape is garbled and indecipherable, apparently due to a malfunctioning tape recorder. In his statement, Pierce said he had parked his car near his former girlfriend's house and then remained in the woods, armed, waiting, and watching. When Pierce saw her talking to another man, he came out of the woods and started shooting his .380 pistol. After emptying his pistol, Pierce grabbed his shotgun and fired it at the vehicle. Pierce recalled that he then fired his shotgun twice into the porch. After conducting a *Jackson-Denno* hearing and after listening to Pierce's taped statement, the trial court determined that Pierce's incriminating comments were uttered spontaneously to the sheriff and that Pierce's custodial statement was also admissible.

1. Pierce contends that the trial court erred in allowing in evidence an audiotape that was partially inaudible.

When a recording is inaudible, its admissibility is subject to question; but when material portions are inaudible, then the recording should be rejected when it is the *only* evidence offered as to the statement. See *Kelley v. State*, 168 Ga. App. 911, 913 (311 SE2d 180) (1983). Here, Chief Investigator Ashley Riner, who conducted the custodial interview, testified at considerable length about the contents of the statement and was extensively cross-examined about it. Moreover, the victim's testimony as well as the physical evidence accumulated at the crime scene, including shell casings, the two weapons, and tire tracks, provided independent corroboration of the key details provided by Pierce in his statement. Plainly, the audiotape did not constitute the only evidence of Pierce's statement. Nor does Pierce claim that the garbled or inaudible portion contained anything favorable to him. *Green v. State*, 250 Ga. 610, 611 (1) (c) (299 SE2d 544) (1983). The State offered a proper foundation for the tape's admission, and Pierce has not shown that the trial court abused its discretion in admitting the tape in evidence. *Guess v. State*, 264 Ga. 335, 336 (2) (443 SE2d 477) (1994).

2. Pierce contends that the trial court erred in admitting the statements he made to the sheriff while he was in custody but before he was afforded proper *Miranda* warnings. At trial, Pierce testified that while he was in custody in a holding cell, the sheriff came and unlocked the cell door. Pierce testified that after the sheriff said, "[w]e have bodies," and "gut up and be a man about it," he blurted out that he did not mean to kill anyone.

*Miranda* warnings are not required unless and until police commence questioning of a suspect in custody. *Jenkins v. State*, 219 Ga. App. 339, 341 (1) (465 SE2d 296) (1995). Voluntary, spontaneous outbursts that are not made in response to any form of custodial questioning or interrogation are admissible at trial. *Smith v. State*, 264 Ga. 857, 859 (452 SE2d 494) (1995). Although Pierce seems to argue that the sheriff prompted him or goaded him into incriminating himself, the sheriff testified otherwise. "There is no burden on State officials to prevent [a] defendant from talking about the incident if he wishes to do so. Simply stated they must not interrogate but they need not refuse to listen." *Zubiadul v. State*, 193 Ga. App. 235, 238 (387 SE2d 431) (1989). In these circumstances, we cannot say that the trial court erred in finding that the outbursts were voluntary and spontaneous.

3. Pierce asserts that the trial court erred by failing to include an instruction on reckless conduct as part of the court's recharge. He contends that the trial court's recharge overemphasized the law favorable to the State and deprived him of his "primary defense" of reckless conduct.

During deliberations, the trial court learned that the jury wanted clarification of the meaning of intent and transferred intent. At that point, the trial court recharged the jury on the principles of transferred intent, intent, criminal intent, the inference to be drawn from the use of a weapon, and the inference that may be drawn from the acts of a person of sound mind and discretion. The trial court cautioned the jury to consider the charge as a whole and not to focus in isolation on the recharge. Defense counsel excepted to the recharge on the basis that the jury's concern about the issue of reckless conduct could be inferred from its question about "just shooting at a noise." The trial court noted the exception but refused to give further instructions.

When, as here, a jury has been fully instructed on the applicable law but subsequently seeks clarification on a particular point, the trial court may exercise its discretion in recharging the jury in full or confining its recharge to the jury's inquiry. *Heflin v. State*, 204 Ga. App. 161, 163 (418 SE2d 770) (1992). As a general rule, in doing so, the trial court is not obligated to repeat all the law favorable to the

defendant. Id. In this case, the jury through its foreperson posed several questions that implicated the legal meaning of intent and transferred intent.

Under the doctrine of transferred intent, when an unintended victim is hurt as the result of an unlawful act actually directed against someone else, the law prevents the perpetrator from taking advantage of his own wrong and so transfers the original intent from the one against whom it was directed to the one who actually suffered from it. *Happoldt v. State*, 267 Ga. 126, 127 (1) (b) (475 SE2d 627) (1996). The recharge at issue was a correct statement of the applicable legal concepts, and the trial court reminded the jury not to place undue emphasis on that portion of its instruction.

Although Pierce now argues that he sought further instruction on reckless conduct to enable the jury to consider finding him guilty of involuntary manslaughter, he was, in fact, convicted of that offense instead of murder. Because Pierce cannot show harm, his argument lacks merit. Finally, having examined the charge as a whole, we find that it substantially presented all of the requested issues in a manner not likely to confuse the jury. See *Pace v. State*, 239 Ga. App. 506, 508 (2) (521 SE2d 444) (1999). No abuse of discretion has been shown. *Heflin*, supra at 163.

*Judgment affirmed. Eldridge and Ellington, JJ., concur.*

DECIDED APRIL 30, 2002.

*Lovett Bennett, Jr.*, for appellant.
*Steven Askew, District Attorney, Charles D. Howard, Assistant District Attorney*, for appellee.