## A02A0612. GRESHAM v. THE STATE.

(566 SE2d 380)

RUFFIN, Judge.

A jury found Darrin Gresham guilty of rape, simple battery, attempted kidnapping, theft by bringing a stolen vehicle into the state, burglary, and three counts of aggravated assault. Gresham appeals, challenging several evidentiary rulings and the sufficiency of the evidence supporting one of his aggravated assault convictions. For reasons that follow, we affirm.

Viewed in favor of the verdict,[1] the evidence shows that the victim was Gresham's former girlfriend. In September 1995, following a physically abusive two-year relationship, the victim moved from Virginia to Georgia to live with her father.

In January 1996, Gresham paid the victim a surprise visit in Georgia. He showed up at the victim's workplace in a mall and told her that he wanted them to get back together. The victim, afraid to be alone with Gresham, agreed to meet him at a restaurant the next day. After the meeting, as the victim was walking to a bus stop to go home, Gresham accompanied her and insisted that she go with him to his motel room. The victim refused, and Gresham followed her onto the bus where he continued to badger her about going to his motel room. At the end of her bus ride, the victim's father picked her up, and Gresham went his own way.

The following morning, after her father had left the house, the victim saw Gresham emerge from a wooded area in back of the house. She confronted Gresham, and he asked her to loan him some money. When the victim refused, Gresham requested to use the phone. Afraid to let Gresham in the house, the victim handed him a cell phone to use outside. According to the victim, the next thing she knew, Gresham "pulled open the screen door and forced his way in." The victim ran into the kitchen to call the police, but Gresham caught her. Gresham wrapped neckties that he had brought with him tightly around the victim's neck, pulled her to the floor, hit her with

---

[1] See *Richardson v. State*, 239 Ga. App. 345 (521 SE2d 239) (1999).

his fists, and kicked her. Grabbing the neckties, Gresham dragged the victim into the living room, threatened to kill her and her father, and ordered her to remove her clothes. After further beating the victim, Gresham dragged her into her bedroom, where he twice forced intercourse, and then took her money. Gresham eventually left the house, and the victim called the police.

Gresham went to the Washington, D.C., area for a short time, where he continued to harass the victim and her family by telephone. On February 16, 1996, Gresham returned to the victim's workplace in Georgia. As the victim was walking through a parking garage, Gresham drove up, got out of his car, and told the victim that he had a gun and would shoot her if she screamed. Although the victim believed Gresham had a gun, she screamed anyway. Gresham then grabbed the victim and attempted to drag her into the car and take her purse. When the victim resisted, Gresham started punching her. Two men, who heard the victim's cries for help, came to her aid. As one of the men approached, Gresham got back in the car and attempted to run over the victim and her rescuer before driving away.

After police arrived, a lookout bulletin was posted for the car Gresham was driving. About one and one-half hours later, Officer Jeffery Adcock spotted the car and arrested Gresham. Adcock searched Gresham, found no weapons, and put him in the back of the patrol car. Another officer then told Gresham "that there was an outstanding warrant for his arrest [a]nd that [they] would take him up to the Felony Against Persons Office . . . so [they] could talk to him there." According to the officer, Gresham responded that "he would tell [them] where the gun was if he [was allowed to] talk[ ] to [the victim]." The officer told Gresham that "it was impossible and it would be [in] his best interest not to talk until [they] reached the office."

As Officer Adcock was driving Gresham to the police station, Gresham started a conversation about "sports, football and baseball." Adcock testified that,

> as we talked, I told [Gresham] several times that if he wanted to talk, he could talk to a detective. And he spoke anyhow. . . . And on the way, he asked me if he ran, when I stopped him, would I have shot him. And I told him it depended. And he asked me if he had reached his hands into his pockets, would I have shot him. And I told him it depended. And he asked me if I would have shot to kill him. And I said it depended. And he said, I should have put my hands in my pockets. And then he told me it was just a matter of time.

Adcock stated that he did not ask any questions to elicit Gresham's statements.

After arriving at the police station, Gresham was informed of his *Miranda*[2] rights. Gresham gave a statement in which he denied raping the victim and maintained that he was not attempting to kidnap the victim from the parking garage, but merely wanted to talk to her.

Among the items found in the car Gresham was driving when he was arrested were a knife, pawnshop receipts, and two notes written by Gresham. The first note, which was addressed to the victim, read that, "by now you are feeling comfortable and safe mainly because the devil is gone." Gresham further wrote that he was "tired of this person who sees blood when he sleeps or can't control the berserk rage within himself" and that he "was afraid of what [he will] do or how [he will] do it to next [sic]." The second note, addressed to the police, stated in part: "since you guys are reading this . . . with any luck I am dead. Seems only fair that someone with my love for revenge against anyone who rebels against my love how violent I can be. Riding down here [to Georgia] the only thing I thought about was killing [the victim] and anyone who got in my way."

1. Gresham asserts that the trial court erred in prohibiting him from testifying about the reason he visited the victim in January 1996. Outside the jury's presence, Gresham proffered the following explanation:

> She told me [on the telephone in December that] she was pregnant and that I need to come down [to Georgia] or send money so that she could . . . go see an OBGYN. . . . I said, . . . I don't have that much money[,] [b]ut I'll come down there[,] . . . because I'm not going to send you no money so you can have another abortion. . . . So we decided when I was going to come.

The prosecutor objected to the admission of this testimony, arguing that it impermissibly put the victim's character in evidence. Gresham responded that the testimony was relevant to show "his motivation for being in the state and meeting with [the victim]." The trial court sustained the objection, finding that Gresham's motivation for being in Georgia was irrelevant to the crimes charged. We agree.

The trial court had discretion to exclude the testimony, and we will not reverse its decision absent an abuse of that discretion.[3] Although Gresham continues to argue that the testimony was relevant to show his motive for coming to Georgia, he has not shown, and

---

[2] See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[3] See *Davis v. State*, 235 Ga. App. 362, 363 (1) (509 SE2d 655) (1998); *Bates v. State*, 216 Ga. App. 597 (454 SE2d 811) (1995).

"we are wholly unconvinced[,] that the evidence excluded tended in any way to disprove any element of the State's case."[4] Thus, the trial court did not abuse its discretion in excluding the testimony on this ground.[5]

Furthermore, Georgia's Rape Shield Statute prohibits evidence of the victim's past sexual behavior.[6] Although an exception in the statute allows the trial court to admit such evidence if, among other requirements, it supports an inference that the defendant reasonably believed the complaining witness consented to the sex acts at issue, this exception would not have permitted Gresham to show his motive for traveling to Georgia to visit the victim.[7] And, while Gresham now argues that his proffered testimony was relevant to show that he believed the victim consented to the intercourse during his January 1996 visit, he did not raise this argument below, and it is, therefore, waived for appeal.[8]

2. Gresham next asserts that the trial court erred in overruling his objection to the victim's testimony about a prior difficulty in which the police were called and Gresham fled the scene.

At trial, the victim testified that Gresham punched and strangled her on numerous occasions. During one incident, Gresham and the victim were watching television in the victim's bedroom when she made a comment about somebody on the show. According to the victim, Gresham got angry and became violent "like [he was] getting ready to hit [her]." The victim's roommate heard the altercation and interceded. Later, the court permitted the victim to testify, over Gresham's objection, that the police were called after the incident, but Gresham left the house. Gresham asserts that the ruling was error. Again, we disagree.

> Unlike similar transactions, prior difficulties between the parties are not independent acts or occurrences, but are connected acts or occurrences arising from the relationship between the same people involved in the prosecution and are related and connected by such nexus. Evidence of the defendant's prior acts toward the victim, be it a prior assault, a quarrel, or a threat, is admissible when the defendant is accused of a criminal act against the victim, as the prior acts are evidence of the relationship between the victim and the defendant and may show the defendant's

---

[4] *Bates*, supra.

[5] See id.; *Davis*, supra.

[6] See OCGA § 24-2-3 (a).

[7] See OCGA § 24-2-3 (b).

[8] See *Gordon v. State*, 235 Ga. App. 169 (2) (508 SE2d 782) (1998); *Croom v. State*, 217 Ga. App. 596, 598-599 (3) (458 SE2d 679) (1995).

motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted.[9]

In this case, the victim's testimony concerned a prior altercation between her and Gresham. Thus, it was admissible evidence of Gresham's violent bent of mind toward the victim.[10] Although the victim also mentioned that Gresham struck her roommate, that does not change the fact that the evidence was admissible because it showed Gresham's violent tendencies toward the victim and the state of their relationship.[11] Accordingly, we find no error.[12]

3. Gresham asserts that the trial court erred in admitting Officer Adcock's testimony concerning the spontaneous statements Gresham made in the back of the patrol car. Gresham argues that the statements should have been excluded because he had not yet been informed of his *Miranda*[13] rights and because they were irrelevant to the issues being tried. Neither contention merits reversal.

"Contrary to [Gresham's first] argument, *Miranda* warnings are not a prerequisite to the admission of evidence concerning voluntary statements not made in response to any form of custodial interrogation."[14] At a *Jackson v. Denno*[15] hearing, Officer Adcock testified that Gresham's statements were unsolicited. Based on this testimony, the trial court found that the statements were admissible because they were not the result of an interrogation. Considering Adcock's testimony, the trial court's finding was not clearly erroneous, and Gresham's "spontaneous and unsolicited statements . . . were not subject to the strictures of *Miranda*."[16]

We also disagree with Gresham that the trial court committed reversible error by overruling his relevancy objection to the spontaneous statements. The statements suggested that Gresham contemplated fleeing after encountering the police, and evidence of flight is generally admissible "as circumstantial evidence of consciousness of guilt."[17]

---

[9] (Citations and punctuation omitted.) *Givens v. State*, 273 Ga. 818, 823 (4) (546 SE2d 509) (2001).

[10] See id.

[11] See *Wall v. State*, 269 Ga. 506, 509 (2) (500 SE2d 904) (1998) ("prior acts toward the victim, be it a prior assault, a quarrel, or a threat, [are] admissible when the defendant is accused of a criminal act against the victim"); see also *Warren v. State*, 185 Ga. App. 108, 110 (3) (b) (363 SE2d 357) (1987).

[12] See *Givens*, supra; *Warren*, supra.

[13] Supra.

[14] *Smith v. State*, 264 Ga. 857, 859 (3) (452 SE2d 494) (1995).

[15] 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[16] *Smith*, supra at 858, 860 (3).

[17] *Landers v. State*, 270 Ga. 189, 191 (5) (508 SE2d 637) (1998).

4. Likewise, we find no reversible error in the trial court's admission of the diving knife and pawnshop receipts police found in the car at the time of Gresham's arrest. As a general rule, evidence of the circumstances surrounding an arrest is admissible if it is relevant to the crimes charged, and we will not reverse a trial court's relevancy determination absent a clear abuse of discretion.[18]

In this case, the evidence showed that Gresham had repeatedly threatened the victim with violence, and his possession of the knife was consistent with those threats. And, even if the knife was irrelevant, given the overwhelming evidence of Gresham's guilt, admission of the evidence, even if error, was harmless.[19]

As for the pawnshop receipts, Gresham did not object to the relevancy of this evidence at trial, but only argued that they constituted hearsay. Thus, Gresham waived his relevance argument for appeal.[20] Furthermore, assuming that the trial court erred in admitting the receipts over Gresham's hearsay objection, given the overwhelming evidence of guilt, the court's decision in this instance was also harmless.[21]

5. Finally, Gresham asserts that the trial court erred in failing to direct a verdict in his favor on Count 2 of the indictment which charged him with aggravated assault. But the record shows that, in its judgment of conviction, the court merged Count 2 into Gresham's rape conviction and did not, therefore, sentence Gresham under Count 2. Gresham does not challenge the sufficiency of the evidence supporting his rape conviction, and because he was not convicted and sentenced for aggravated assault under Count 2, the failure to direct a verdict provides no basis for reversal.[22]

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED JUNE 4, 2002.

*John R. Greco*, for appellant.
*Patrick H. Head, District Attorney, Rose L. Wing, Dana J. Norman, Assistant District Attorneys*, for appellee.

---

[18] See *Benford v. State*, 272 Ga. 348, 349-350 (3) (528 SE2d 795) (2000).
[19] See id. at 350.
[20] See *Gordon*, supra.
[21] See *Benford*, supra.
[22] See *Wallin v. State*, 270 Ga. 889, 890 (514 SE2d 828) (1999).