A02A2010. PINCKNEY v. THE STATE.
(576 SE2d 677)

RUFFIN, Presiding Judge.

A jury found Asher Loren Pinckney guilty of armed robbery, financial transaction card theft, obstruction, attempting to elude, and driving without a license. He appeals, challenging the admissibility of several statements to police and the sufficiency of evidence supporting his armed robbery conviction. For reasons that follow, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that a masked man entered the Sumner Suites Hotel in Cobb County at approximately 5:00 a.m. on July 18, 1997, and robbed Herbert Henderson at gunpoint. The gunman fled, and Henderson immediately reported the crime to police, describing the robber's race, build, and clothing.

Responding officers saw a vehicle near the scene that raised their suspicions. Noting that no other cars were on the road and that

---

[1] See *Parks v. State*, 257 Ga. App. 25 (1) (570 SE2d 350) (2002).

the vehicle lacked a tag light, the officers stopped it and identified Pinckney as the driver. During the stop, the officers observed red nylon clothing tucked between the car seats, and they stepped behind the vehicle to discuss whether the clothing matched the description given by Henderson. At that point, Pinckney drove away, leading police on a 42-mile high-speed chase on the interstates and city streets surrounding Atlanta. Pinckney eventually drove his car into a ditch, got out, ran into a heavily wooded area, and eluded police for several hours before officers apprehended him.

After Pinckney's capture, Officer Roger Berkhardt placed him in a patrol car, gave him a glass of water, and retrieved his boots, which Pinckney had lost in the woods. While in Berkhardt's custody, Pinckney bragged about his car and driving skills and then asked whether police had found "the money in-between the seats." When Berkhardt responded "no," Pinckney stated that he had placed the money there when he ran from the hotel. He further indicated that he had dropped his gun in the woods during the chase.

Although Berkhardt had not planned to question Pinckney, he grew concerned about Pinckney's incriminating comments and read him his rights under *Miranda v. Arizona*.[2] Pinckney stated that he understood his rights and that he wished to continue talking to police without counsel present. Pinckney then described the gun he used during the robbery, gave further details about its location, and stated that he had parked his car on a grassy shoulder near the hotel before the robbery. Berkhardt testified that police found fresh tire tracks on that grassy shoulder.

Two detectives subsequently interviewed Pinckney, who again confessed to the crime. The police also seized from Pinckney's car various clothing items and several credit cards in the name of A. W. Leline, Jr. At trial, Henderson identified the garments found in Pinckney's car as the clothing worn by the robber.

1. Pinckney argues that the trial court erred in admitting his various inculpatory statements to police. Under Georgia law, when a defendant objects to the admission of such statements at trial, "the state must prove, by a preponderance of the evidence, that the confession was voluntary, and, if the confession is the product of a custodial interrogation by officers of the government, that the confession was preceded by the accused's knowing and voluntary waiver of his *Miranda* rights."[3]

In this appeal, we must construe the evidence favorably to the trial court's ruling and uphold the court's findings if any evidence

---

[2] 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[3] (Punctuation omitted.) *State v. Baker*, 238 Ga. App. 802, 803 (1) (521 SE2d 24) (1999).

supports them.[4] The trial court's "decisions regarding questions of fact and credibility must be accepted unless clearly erroneous."[5]

(a) Pinckney first claims that the trial court improperly admitted his statements to Officer Berkhardt because Berkhardt failed to read him his *Miranda* rights immediately after taking him into custody. He further argues that this failure tainted all of his statements to police. We disagree.

The record shows that Berkhardt advised Pinckney of his *Miranda* rights after Pinckney made several incriminating statements. According to Berkhardt, however, the pre-*Miranda* statements were spontaneous and did not result from any interrogation. In fact, Berkhardt testified that he never questioned Pinckney.

A police officer need not advise a suspect of his *Miranda* rights unless and until the officer begins questioning the suspect in custody.[6] "Voluntary, spontaneous outbursts that are not made in response to any form of custodial questioning or interrogation are admissible at trial."[7] The State presented evidence that Pinckney's initial inculpatory statements were spontaneous comments made before any custodial interrogation and thus "were not subject to the strictures of *Miranda*."[8] Accordingly, the trial court did not clearly err in rejecting Pinckney's *Miranda* argument.[9]

(b) Pinckney also claims that his various statements to police were not voluntary. Specifically, he argues that the police improperly induced him to make the statements through "fear of injury" and by telling him that "he would have to wait an inordinate amount of time without bond in order to speak to a public defender."

At a *Jackson v. Denno*[10] hearing conducted before trial, the two detectives who interviewed Pinckney testified that they advised him of his *Miranda* rights orally and in writing. Pinckney signed a form indicating that he understood those rights and chose to waive them. The detectives further testified that they did not threaten Pinckney or offer him any hope of benefit or reward. They also noted that Pinckney never requested an attorney during the interview,

---

[4] See id.

[5] Id.

[6] See *Pierce v. State*, 255 Ga. App. 194, 196 (2) (564 SE2d 790) (2002).

[7] Id. See also *Metts v. State*, 270 Ga. 481, 483-484 (3) (511 SE2d 508) (1999) ("The pre-*Miranda* inculpatory statement . . . was not subject to suppression because it was not the product of an interrogation or its functional equivalent.").

[8] (Punctuation omitted.) *Gresham v. State*, 255 Ga. App. 625, 629 (3) (566 SE2d 380) (2002). See also *Pierce*, supra (" 'There is no burden on State officials to prevent (a) defendant from talking about the incident if he wishes to do so. Simply stated they must not interrogate but they need not refuse to listen.' ").

[9] See *Gresham*, supra.

[10] 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

although he asked the detectives what would happen "if he wanted to get a public defender." One of the detectives responded that Pinckney would be taken to a jail cell while they completed their paperwork. The detective also informed Pinckney that he would appear before a judge within 24 hours. At that point, Pinckney stated that he wanted to talk to the detectives, and they proceeded with the interview, which one detective characterized as "calm and leisurely."

Pinckney also testified at the hearing, asserting that when police first apprehended him after the chase, an Officer Brown "punched [him] between five and eight times in [his] face," causing him injury. Another officer then warned him not to report Brown's actions or "they would do worse." In addition, Officer Berkhardt, who transported Pinckney to the police station, allegedly advised him to "tell the police what they want[ed] to hear." Pinckney further testified that, once at the jail, he asked one of the interviewing detectives about obtaining an attorney, and the detective stated, "if [Pinckney] wanted an attorney it's going to take a long time for [him] to get [one] and [he] would be sitting in jail for a while, so [he] might as well go ahead and tell them what they wanted to hear and get it over with." According to Pinckney, he only waived his *Miranda* rights and confessed because he was scared of the police.

The trial court overruled Pinckney's objection, concluding that the State presented sufficient evidence that his statements to police were free and voluntary. Again, we find no error. Construed favorably to the trial court's ruling, the evidence shows that Pinckney agreed to talk to police. The atmosphere during the custodial interview was "calm and leisurely," and Pinckney told the detectives that Officer Berkhardt was "cool." Finally, despite Pinckney's claim that an arresting officer punched him numerous times in the face, one of the interviewing detectives testified that Pinckney had no apparent injuries at the time of the interview.[11] Under these circumstances, the trial court did not clearly err in rejecting Pinckney's coercion claim.[12]

Similarly, the trial court did not clearly err in dismissing Pinckney's claim that detectives improperly questioned him after he requested counsel. Although Pinckney inquired about the procedures involved "if he wanted" a public defender, he did not ask for an attorney and reiterated that he wished to speak with the officers. Pinckney's procedural query was not an unambiguous request for coun-

---

[11] Although Officer Brown testified as a rebuttal witness at the end of trial and denied hitting Pinckney, he did not testify during the *Jackson v. Denno* hearing.

[12] See *Anderson v. State*, 178 Ga. App. 355, 356 (2) (343 SE2d 411) (1986) (trial court did not err in rejecting defendant's claim that he confessed because police "threatened to beat it out of him and he was scared").

sel.[13] Accordingly, the trial court did not err in overruling his objection on this ground.[14]

2. We also find no merit in Pinckney's challenge to the sufficiency of the evidence supporting his armed robbery conviction.[15] The substantial evidence presented by the State, including Pinckney's confession, Henderson's clothing identification, and Pinckney's flight from police, authorized the jury to find him guilty of armed robbery beyond a reasonable doubt.[16]

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED JANUARY 28, 2003.

*Kenneth T. Israel*, for appellant.

*Patrick H. Head, District Attorney, Dana J. Norman, Amelia G. Pray, Rose L. Wing, Assistant District Attorneys*, for appellee.

---

[13] See *Carroll v. State*, 275 Ga. 160-161 (2) (563 SE2d 125) (2002) (defendant's question about " 'how' he would get an attorney" was not an unambiguous request for counsel and thus did not preclude admission of his subsequent statements to police).

[14] See id. at 161.

[15] Pinckney's enumeration of error broadly asserts that the evidence was insufficient "as to all counts." In his brief, however, he only presents argument relating to the armed robbery conviction. Accordingly, he has abandoned this claim of error as it relates to the other convictions. See *Bogan v. State*, 249 Ga. App. 242-243 (1) (547 SE2d 326) (2001); Court of Appeals Rule 27 (c) (2).

[16] See *Parks*, supra at 25-26; *Wakily v. State*, 225 Ga. App. 56, 57 (1) (483 SE2d 313) (1997).