A04A2207. PASUER v. THE STATE.
(609 SE2d 193)

ELLINGTON, Judge.

A Walker County jury found Michael Pasuer guilty of possession and sale of cocaine, OCGA § 16-13-30 (a), (b). Following the denial of his motion for new trial, Pasuer appeals, contending the trial court

---

erred in admitting certain evidence and in refusing to give a requested jury instruction. Finding no error, we affirm.

Viewed in favor of the jury's verdict,[1] the evidence showed the following relevant facts. On July 11, 2000, a Lookout Mountain Drug task force officer received information from two informants, a male and a female, that Pasuer and his wife were involved in illegal drug sales. The officer, along with other task force officers, Georgia Bureau of Investigation special agents, and a federal drug agent (collectively, "the officers"), met with the two informants later that day to conduct a "controlled buy" of an ounce of cocaine from the Pasuers. Immediately prior to the transaction, the officers gave the informants specific instructions about where they were to go and how they should conduct themselves during the controlled buy. The informants understood that they were not to use cocaine during the transaction or purchase additional cocaine for their own use. The officers thoroughly searched the informants and their car, and gave the informants $1,100 in government funds to purchase an ounce of cocaine. They also attached an electronic surveillance device to the male informant's belt so that the officers could listen to and record the drug purchase. The informant testified at trial that he did not touch the device after the officers attached it to his belt. The officers followed the informants to the Pasuers' residence, then patrolled nearby so they could watch the house and listen to the transmission of the purchase.

The informants entered the home and went to a back room with Pasuer's wife. Pasuer was asleep on the couch in a separate room. After Pasuer's wife weighed an ounce of cocaine, the female informant "cut" the cocaine by removing seven grams and replacing it with a different powder.[2] She put the seven grams in a separate baggie. After the transaction, the informants went directly to a pre-arranged location and met with the officers. The informants gave the officers two plastic baggies containing a combined total of 32.2 grams of cocaine.[3] The officers also retrieved the transmission device and secured the audiotape of the transaction in an evidence bag.

Three days later, the officers arranged for the informants to go back to the Pasuers' home to pay them for drugs the couple had sold to the informants on credit before the controlled buy. The officers gave

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979).

[2] The female informant testified that she decided to separate the seven grams into a different bag because that would have been a normal thing to do when buying such a large amount of cocaine. The informant admitted that, if she had not been participating in a controlled buy, she would have made extra money by selling the seven grams and keeping all of the proceeds.

[3] One ounce equals 28.35 grams.

the informants $350 to pay Pasuer so the informants would remain in his "good graces," in case the officers decided to conduct another controlled buy from Pasuer in the future. The informants met with Pasuer and gave him $350 to pay off the drug debt.

The officers attempted to arrest the Pasuers a few weeks after the July 11 controlled buy, but they discovered that the couple had fled their home and were staying in a motel. When the officers arrived at the Pasuers' motel room, Pasuer tried to climb out the back window. After the officers caught Pasuer and read him his *Miranda*[4] rights, he told the officers that he was a "mid-level" drug dealer who usually purchased one quarter kilogram of cocaine each week. According to Pasuer, he would usually resell the cocaine within a week of each delivery and earn about $3,000 in profits. The State later charged Pasuer and his wife with possession, sale, and trafficking in cocaine. A jury found both of them guilty on the sale and possession charges, but not guilty of trafficking.[5]

1. Pasuer contends the trial court erred in admitting his custodial statement because he made the statement after officers promised him that, if he cooperated, he would get a lower bond. Pasuer argues that his "confession" was involuntary and inadmissible because it was induced by a "hope of benefit." See OCGA § 24-3-50 ("To make a confession admissible, it must have been made voluntarily, [i.e.,] without being induced by another by the slightest hope of benefit or remotest fear of injury."). This argument fails for two reasons.

First, OCGA § 24-3-50 does not apply to Pasuer's custodial statement in this case. Although the statement was an incriminating admission regarding his general, drug-related activities, Pasuer did not admit to selling cocaine to the informants on July 11, 2000, nor did he refer to the transaction or the informants in any way. Therefore, Pasuer's statement was not a confession to the crimes for which he was charged. See *Pressley v. State*, 201 Ga. 267, 270 (1) (39 SE2d 478) (1946) ("A confession is an admission freely and voluntarily made by the accused whereby he acknowledges himself to be guilty of the offense charged, and discloses the circumstances of the act, and the share and participation he had in it.") (citation omitted). The safeguards of OCGA § 24-3-50 do not apply to incriminating statements which fall short of confessions. *Jewett v. State*, 264 Ga. App. 571, 572 (1) (591 SE2d 459) (2003).

Second, even if OCGA § 24-3-50 applied to Pasuer's custodial statement in this case, the phrase, "the slightest hope of benefit," does not refer to a reduction in bond. *Tillman v. State*, 251 Ga. App. 330,

---

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).
[5] The trial court merged the sale and possession convictions for purposes of sentencing.

332 (2) (554 SE2d 305) (2001). The promise of a reduction in bond is a collateral benefit that does not make an otherwise admissible confession involuntary under OCGA § 24-3-50. *Pounds v. State*, 189 Ga. App. 809, 810 (1) (377 SE2d 722) (1989); see also OCGA § 24-3-51 ("The fact that a confession has been made under . . . a promise of collateral benefit shall not exclude it.").

Therefore, Pasuer's argument that his custodial statement was inadmissible under OCGA § 24-3-50 is without merit.

2. Pasuer claims the trial court erred in admitting the audiotape of the controlled buy because portions of the tape were inaudible, these "gaps" contained evidence that was favorable to his defense, and this favorable evidence could not be corroborated because the informants gave conflicting testimony about what occurred during the controlled buy. For the following reasons, we disagree.

(a) As long as the State presents a proper foundation for an audiotape, a trial court has the discretion to admit it, even if part of it is inaudible. *Guess v. State*, 264 Ga. 335, 336 (2) (443 SE2d 477) (1994). Further, if the parties who were present when the audiotape was made testify about the statements or transaction recorded, the tape may be admitted as corroboration of the witnesses' testimony, even if it is partially inaudible. *Kelley v. State*, 168 Ga. App. 911, 913 (3) (311 SE2d 180) (1983). In fact, a trial court is not *required* to exclude an otherwise admissible audiotape containing inaudible material unless the tape is the *only* evidence offered to prove a material fact. *Pierce v. State*, 255 Ga. App. 194, 195 (1) (564 SE2d 790) (2002); *Kelley v. State*, 168 Ga. App. at 913 (3). Once the trial court exercises its discretion and admits an audiotape, "in the absence of a showing of tampering, alteration, or other major deficiency attacking the basic integrity of the recordings, the fact that portions of the [audiotape] are inaudible goes to weight and not admissibility." *Guerra v. State*, 210 Ga. App. 102, 105 (3) (b) (435 SE2d 476) (1993).

In this case, the officer who operated the tape recorder testified that he knew how to operate the surveillance equipment and made sure it was in good working order before the controlled buy. He listened to the direct transmission of the controlled buy while watching the Pasuers' house. The officer also testified that he had reviewed the audiotape, that the tape had not been altered in any way, and that he recognized the voices of the informants and Mrs. Pasuer on the tape. According to the officer, the audiotape was much clearer than the direct transmission had been but was consistent with what he had heard during the controlled buy. Further, both of the informants testified extensively about the controlled buy. They also testified that they had listened to the audiotape and, even though some of the recording was difficult to understand, it fairly and accurately represented what had happened during the transaction.

We find that, because the audiotape was not the only evidence of what occurred during the controlled buy, the trial court was not required to exclude it simply because it was partially inaudible. *Pierce v. State*, 255 Ga. App. at 195 (1); *Kelley v. State*, 168 Ga. App. at 913 (3) (audiotapes which corroborated the testimony of an agent who was present during the taped conversation were admissible even though the tapes lacked "clarity"). Further, we find that, under the circumstances, the trial court did not abuse its discretion in admitting the audiotape and that, once admitted, its weight was for the jury to determine. *Guerra v. State*, 210 Ga. App. at 105 (3) (b); see *Gambrel v. State*, 260 Ga. 197, 200 (2) (391 SE2d 406) (1990) (investigator's testimony that he had listened to a transaction while it was being recorded, that he had reviewed the tape recording, and that the tape was a complete recording of the transaction established an adequate foundation for admission of the tape).

(b) Pasuer claims, however, that the audiotape should not have been admitted because, during an inaudible "gap" in the audiotape of the controlled buy, the informants used cocaine in violation of their agreement with the officers. The transcript shows that the informants gave directly conflicting testimony at trial about whether this drug use actually occurred. From this evidence, the jury could either infer that the drug use occurred during an inaudible portion of the tape or that the tape did not record the incident because it never happened. Resolution of this conflict was clearly an issue for the jury. *Jackson v. State*, 252 Ga. App. 268, 269 (1) (555 SE2d 908) (2001) (it is the jury's role to resolve conflicts in the evidence and judge the credibility of witnesses). This argument provides no basis for excluding the audiotape.

(c) Pasuer also argues that under *Pierce v. State*, 255 Ga. App. at 195 (1), a partially inaudible audiotape is admissible only if the State proves that the inaudible portion did not contain evidence favorable to the defense, but *Pierce* does not stand for that proposition. In *Pierce*, this Court found that the audiotape at issue was admissible even though some of it was "garbled and indecipherable," then simply noted that the defendant had not claimed that the garbled portion contained any evidence that was favorable to his defense. Id. at 195. Because the issue of whether the tape would still be admissible if the defendant had made such a claim was not before this Court, we did not reach the issue.[6] Accordingly, Pasuer's reliance on *Pierce* is

---

[6] Notably, in *Pierce*, this Court relied on *Green v. State*, 250 Ga. 610, 611 (1) (c) (299 SE2d 544) (1983), in which the Supreme Court of Georgia included a similar observation without ruling on its implications. *Green* in turn relied on *Harris v. State*, 237 Ga. 718, 725 (5) (230 SE2d 1) (1976), wherein the Supreme Court held that, because the State presented a proper foundation for a tape recording and the defendant had not claimed a "gap" in the recording

misplaced, and he has failed to support his argument that a trial court must exclude an otherwise admissible audiotape if the State is unable to disprove a defendant's claim that an inaudible portion might contain favorable evidence.

3. Pasuer contends the trial court erred in refusing to give his requested jury instruction on gross police misconduct. The proposed charge read as follows: "When the police or those acting on their behalf conduct themselves in such a manner that is fundamentally unfair and shocking to the universal sense of justice mandated by the Constitution causing demonstrable prejudice to the Defendant the Defendant may be acquitted of the charge." See *Gober v. State*, 249 Ga. App. 168, 171 (2) (547 SE2d 656) (2001).[7] The trial court denied the request to charge after finding that Pasuer's allegations of police misconduct did not rise to the level of a due process violation. On appeal, Pasuer argues the following actions justified the charge.

(a) Pasuer claims that an officer forced the informants to participate in the controlled buy by threatening to prosecute them on an earlier drug arrest, telling them that a conviction could result in a lengthy prison term, and telling the female informant that the State would take away her children if she did not cooperate. The officer, however, denied that he had threatened or coerced the informants in any way in order to get them to participate in the controlled buy, and testified that the informants agreed to cooperate so they could stay out of jail after being caught with illegal drugs. The evidence also showed that the Georgia Department of Family and Children Services (DFCS) removed the female informant's two small children from her home based upon allegations of neglect before she and the

---

contained favorable evidence, he had not been harmed by the tape's admission. The Court did not cite any authority for its brief reference to favorable evidence and did not hold that a tape must be excluded when the defendant makes such a claim.

[7] In *Gober*, officers conducted an undercover "reverse sting" drug sale using methamphetamine that their police department had previously seized in unrelated drug arrests. 249 Ga. App. at 169. The defendant argued that the officers failed to keep adequate records about the source of the methamphetamine, so it should have been destroyed instead of being used for police sting operations. Id. According to the defendant, the officers' "misconduct" violated his due process rights. Id. This Court rejected the argument, holding that

> [t]o violate due process, the State's misconduct must be so extreme that it caused demonstrable prejudice to the defendant's recognized constitutional or statutory rights or was so outrageous that it was fundamentally unfair and shocking to the universal sense of justice mandated by constitution or statute so as to deprive the defendant of a fair trial as a matter of law. Absent demonstrable prejudice, a finding that such misconduct was so outrageous as to demand dismissal of the indictment would occur only in the rarest of cases.

(Punctuation and footnotes omitted.) Id. at 171 (2). Applying this standard, this Court found that the officers' failure to keep accurate records on the drugs was not so outrageous as to require reversal of his conviction. Id.

officer discussed the controlled buy, and the officer testified that he had no control over DFCS' decision on whether to remove the children from her home.

Assuming for the sake of this appeal that Pasuer's allegations regarding the officer's threats are true, however, Pasuer has cited to no authority that supports a finding that this misconduct rose to the level of a due process violation. We agree with the trial court that the misconduct was not "so outrageous that it was fundamentally unfair and shocking to the universal sense of justice mandated by constitution or statute so as to deprive the defendant of a fair trial as a matter of law." (Footnote omitted.) *Gober v. State*, 249 Ga. App. at 171 (2). Further, Pasuer has not established how he was unfairly prejudiced by the officer threatening the informants in order to get them to cooperate in the controlled buy. After all, there was no evidence that either Pasuer or his wife were threatened in order to get them to sell cocaine, and their decision to do so is what led to their convictions. Id. at 171-172 (2). Accordingly, the trial court did not err in refusing to give the requested jury instruction on the basis of this alleged police misconduct.

(b) Pasuer also complains that the State charged him with drug trafficking even though they knew the female informant had tampered with the cocaine.[8] Pasuer has presented no evidence, however, that the officers had any prior knowledge of, encouraged, or participated in the evidence tampering. It is undisputed that they had told the informants not to tamper with the evidence, and there is no evidence that they told the female informant to "cut" the cocaine in order to increase its weight. Having reviewed the entire record, we find Pasuer has failed to present any evidence or cite to any authority to support a finding that the officers acted unreasonably under the circumstances. Accordingly, we find the trial court did not err in refusing to give the requested jury instruction on police misconduct. See *Hill v. State*, 259 Ga. 557, 558 (3) (b) (385 SE2d 404) (1989) (if any portion of a requested jury instruction is not authorized by the evidence, denial of the request to charge is proper).

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED JANUARY 7, 2005.

*Christopher A. Townley*, for appellant.

---

[8] Although Pasuer was charged with trafficking under OCGA § 16-13-31 (a) (1), which required the jury to find that the cocaine purchased by the informants weighed at least 28 grams, the jury ultimately acquitted him of the charge.

*Herbert E. Franklin, Jr., District Attorney, Bruce E. Roberts, Assistant District Attorney*, for appellee.